State ex rel. Cunningham vs. Board of Assessors.

---

No. 12,892.

State of Louisiana ex rel. M. J. Cunningham, Attorney General, et als. vs. The Board of Assessors of the Parish of Orleans.

### Syllabus.

1. *Proviso of the Constitution of 1898.*—The amount claimed for taxes for 1898 is not due. The proviso of the article of the Constitution of 1898 regarding exemptions has not taken "Colleges" and "Schools" out of the general exempting clause of the article.

2. *The old proviso, with words "or used", changed in that respect.* The amount claimed for taxes for years preceding the year 1898 is not due for the reason that it was too late in the history of exemptions, under the Constitution of 1879, to change contemporaneous construction and the rules and decisions of the courts of dates prior to the present Constitution.

3. *Under contemporaneous construction property was exempt from taxation.* All persons should bear the burthens of taxation alike. Only a few (under the Constitution of 1879) would be made to bear them, as relates to educational institutions, if this court were to change the judgment previously rendered.

4. *Organized for purposes of charity.* Institutions organized execlusively for charitable purposes are exempt from taxation, provided they are conducted to relieve the worthy, helpless and infirm. The moment amounts are collected to provide revenues to pay large salaries or wages to favored employees or to conduct a business for income, the exemption ceases.

The evidence, as relates to the institutions heretofore decreed exempt from taxation, does not show anything of the kind, therefore the former judgment of the court remains in force as relates to the present condition of the institutions as shown by the testimony of record.

5. *Costs.* The State is not liable for costs in her own courts.

APPEAL from the Civil District Court for the Parish of Orleans.
*King, J.*

*M. J. Cunningham,* Attorney General, *Samuel L. Gilmore,* City Attorney, *Frank C. Zacharie* and *Ambrose Smith,* for Relators, Appellants.

*Farrar & Lemle* and *I. D. Moore,* for Hebrew Benevolent and Touro Infirmary, Intervenors, Appellees.

*Richardson & Soule* for George Soule, Intervenor and Appellee.

*R. H. Browne* for Leland University and the Young Men's Christian Association, Intervenors, Appellees.

*Leovy & Leovy* for Christian Woman's Exchange, Intervening Defendant, Appellee.

*Bernard McCloskey* for Society of Daughters of St. Vincent de Paul, Conducting the Hotel Dieu and Louisiana Retreat, Intervenors, Appellees.

*W. W. Howe* and *H. H. Hall* for Christ Church Cathedral, Intervenor, Appellee.

The opinion of the court was delivered by MILLER, J.

On the rehearing by BREAUX, J.

MILLER, J. The relators, the State of Louisiana and the City of New Orleans, apply for a writ of *mandamus* to compel the Board of Assessors to assess for taxation the property of a number of corporations, and of individuals, who claim the property is exempted from taxation because devoted part to schools, part to charitable uses, and another portion to a cemetery. The board has placed all the property on the rolls, but as exempt, and the answer of the board avers the exemptions. The owners of the property have intervened, asserting the exemptions they respectively claim. From the judgment of the lower court, in favor of the board and intervenors, the relators take this appeal. Yielding to the request of the relators for a speedy trial,

the case has been heard since our adjournment by the justices of this court not absent on their vacation.

It is the duty of the Board of Assessors to put on the assessment rolls for taxation all property liable to taxation not within the exemptions stated in the Constitution. The question whether or not the property is exempt is not submitted to the final determination of the board. It is supposed that the exemptions are clearly stated, so that the board can have no difficulty in performing their function to assess all property not exempt. But if the assessors omit to place on the rolls for taxation property they may deem exempt, their omission is to be viewed as a failure to perform a ministerial duty. We, therefore, pass from the contention of the defendants that the determination of the board not to assess the property involved in this controversy is conclusive. The State and City, in our opinion, are clearly entitled to the remedy given by the law to compel official performance of mere ministerial duty. Revenue Act No. 106 of 1896, Section 7, et seq., Code of Practice, Art. 829 et seq.

The other preliminary contention is as to the right of the property owners to interfere in this proceeding. They have been heard on the interventions. Whether or not they are bound by the judgment now to be rendered after that hearing, requires no determination; that will be in order if the questions are hereafter ever raised by the intervenors.

The controversy arises under that part of Article 207 of the Constitution of 1879 that exempts from taxation all buildings and property used exclusively for colleges or other school purposes; places of religious worship or burial, and all charitable institutions, the article closing with the *proviso* that the property so exempted be not used or leased for purposes of private or corporate profit or income. Included in the property the relators claim should be assessed and asserted by the owners to be exempt, under the exemptions of schools and colleges, is the property known as Soule's College, the Leland University, the Farrell School, Mrs. Seaman's School, the Sacred Heart Convent and the Jesuit College, all owned by the corporations, or individuals, conducting these educational institutions. It is insisted these institutions are not exempt because of the provision of the Constitution. It is not claimed that any of the property is leased, but it is conceded the property is owned by those who conduct the schools or colleges sought to be taxed. The argument is that the

property is to be deemed used for private profit or income, because the scholars or students are charged for the education they receive. It was known to the framers of the Constitution that in all schools and colleges, except the free schools, a charge is made for the instruction. Free schools established by the city or State, usually on public property, required no special exemption. If, therefore, it had been intended by the *proviso* to exclude from the exemption all colleges and schools that received pay for the education afforded, the exemption provision in the body of the article served no purpose. It might be that a *proviso*, under certain circumstances, would so modify the provision to which it applies as to make the provision meaningless. The current of authority and reason favor that interpretation which will not make the *proviso* sweep away in its entirety the provision; it is the usual province of the *proviso* only to qualify (Dwarris on Construction, p. 119; notes at foot). We pause on that construction of this *proviso* that practically does away with the exemption of schools and colleges the body of the article so plainly announces.

We have been referred to our decision in Lichtentag vs. Tax Collector, 46th Ann. p. 572. There the exemption was claimed for a school teaching shorthand and gymnastic exercises. In the course of the opinion allusion was made to an allegation in the petition that the school was conducted for the profit of the owner, and the court added that fact excluded the exemption, but the substantial ground of the decision, *i. e.,* the character of the school, was that on which the court denied exemption. In Indiana, we presume, the constitutional provision or legislation on this subject is similar to the article in our Constitution, and there it has been held that the schoolhouse property exemption is not excluded because the earnings of the school accrued to the owner conducting the institution (34th Indiana, cited in the United States Digest, p. 822, No. 676). In the earnest contention in this court, in reference to the exemption from taxation claimed by the Tulane University, it is true the taxability of the university was not asserted, but it is impressive that, although all know the students of the unversity pay for the instruction they obtain, it never suggested itself that the charge for instruction subjected the university to taxation (State *ex rel.* Tulane Educational Board vs. Board of Assessors, 35th Ann., p. 666; Tulane Educational Fund vs. Board of Assessors, 38th Ann., p. 295). We find ample scope for the *proviso* without giving it that construction sought at our hands by the relators. If

the owner leases or grants the use of his property for school or college purposes, thereby deriving income or profit, there is no reason why he should enjoy an exemption from taxation. There is abundant authority that such lease excludes the exemption conferred on school or college property (43rd Minn. p. —, cited in the U. S. Digest for 1890, p. 3538, No. 82; 32nd Hun., N. Y., cited in the U. S. Digest for 1894, p. 706; Cooley on Taxation, Ed. 1886, p. 203). There is no feature of a lease in this case. In our present Constitution, we perceive the word "used" in the similar *proviso* contained in that instrument is discarded, doubtless considered redundant (Constitution 1898, Art. 230). We are not advised of any purpose of the recent convention to restrict or change in any material respect the exemption of schools and colleges conferred by the Constitution of 1879, and it seems to us the exemption, as expressed in our present Constitution, is all ever intended by the Constitution of 1879. At any rate we find reasonable scope for the *proviso* under discussion, without giving it the effect of annihilating practically, the exemption in the body of the article announcing by the plainest import language can convey the exemption of schools and colleges, though charges for the education are made by the institutions. Our interpretation, that excludes all property used for schools and colleges when the owner derives income or profit from the lease or right of use granted by him, assigns to the *proviso* all the force we think it is entitled to exert, and gives due effect to the exemption as it is written "of all buildings or propeprty used exclusively for school or college purposes."

The argument further insists that a part of the Jesuits' College is used for purposes other than the college. It appears, from the testimony, that the priests officiating in the Jesuits' church, adjoining, occupy apartments in the college building. This use, we are clear, can not be deemed at all incidental to the college. When property, exempted from taxation for one purpose, is used also for another. it has been claimed the entire exemption is lost. It is not of ready appreciation that when the main use of property carries that exemption, it should be entirely lost because a part, in this case inconsiderable, is used for another purpose. In our view, in such a case, the part used for the purpose disconnected from that for which the exemption is conferred, should be assessed at a value proportioned to that of the entire building (Burroughs on Taxation, S. 71; Grand

Lodge of Masons vs. City, 44th Ann., 659). We are reluctant to recognize implied exemptions.

The aphorism that exemptions are to be strictly construed is consistent with that reasonable construction that embraces incidents purely within the spirit, if not the terms, of the exception.

The use of apartments in the college by the teachers may be deemed contributory to the discipline and efficiency of the institution. The fact that they pay no rent, and reside in the college only because they are employed in it, aids the view that such residence is the incident of the purpose of the college, and hence a circumstance not prejudicial to the exemption. This is the conclusion reached by decisions of other States with legislative and constitutional restriction like ours on this subject. We find a decision of that character cited in the United States Digest, from New Jersey; another from New York, U. S. Digest, p. 823, No. 684; U. S. Digest for 1890, p. 3538, No. 90. Our predecessors held this view. Blackman vs. Tax Collector *et als.* 39th Ann., p. 592. All this, and mainly because our predecessors have so held, has led us to the conclusion that the partial use of the college building by the teachers employed in the college is not fatal to the college exemption. We feel called on to state that our decision on this point is to be deemed strictly confined to the facts of this case as presented in the record. We are not inclined to strain college and school exemptions so as to embrace property substantially devoted to residences.

The property known as the Hotel Dieu, the Touro Infirmary, the Louisiana Retreat; the two first prominent hospitals, and the last devoted to the care of the insane; the property of the Young Men's Christian Association; that of the Woman's Exchange and the property of the Firemen's Charitable Association, the relators claim, should be assessed; and, on the other hand, it is asserted that all this property is exempt, part because a cemetery, and the residue being charitable institutions. While it is true the use of the property, and not the character of the corporation or the owner, is the test of the right to the exemption, still, in determining the uses of this property the fact can not but exert appropriate influence that the Hotel Dieu, and the Retreat for the insane, are owned and conduced by the Society of the Daughters of St. Vincent de Paul, devoted solely to charity, and it is not without pertinence to this controversy that the Infirmary is administered by the Hebrew Benevolent Association, the

title of the corporation being suggestive of the purpose for which the infirmary was established. In the charter of the Hebrew Association the corporate purpose is stated to be "to afford relief to the poor deserving aid," and to that end the. charter conferred authority to erect and maintain the infirmary. In the charter of the Sisters the corporate object was avowed "that the sisters might more widely diffuse their usefulness to the fatherless, the sick and the poor," and to that end the Sisters were provided thé Retreat and the Hotel Dieu. Those charters manifest the legislative appreciation of the purposes to which the institutions were to be devoted, and to maintain the relators' contention we must hold that the institutions have become diverted to uses other than those contemplated by the charters. That the institutions have been operated with a view to profit, is in marked contrast with the fact placed before us by the testimony, that contributions are annually required from the philanthropic to defray the expenses for physicians, nurses, food and medicine, the institution furnishes those unable to pay, or, at least, not able to pay the usual charges incident to medical treatment. We gather from the record that the Retreat opens its doors annually to numbers of the afflicted without a dollar of compensation beyond a charge that does not cover the actual expense for the patient, and this charge is often paid because the patient has neither purse of his own, nor that of friends to respond. It is also in evidence that the Retreat takes care for a time, at least, of the indigent insane cast on the city, making only a charge that excludes any possibility of profit, if, indeed, it covers the burden the Retreat assumes. We find from the record that the Hotel Dieu devotes a part of its space to beds for the indigent sick; for these beds, food, medicines, and the services of the physician the institution furnishes, a charge is made, often not responded to, nominal in amount and not enough to defray expenses. We find that the Touro Infirmary sets aside a large portion of its space for beds to accomodate the destitute sick from whom no pay is expected or received; that they are provided by the institution with medicines, food, and the services of a physician; that the aged. and infirm, without charge, find shelter and care in a part of the institution; that the management assigns some of the wards of the institution for the destitute to be provided for by the city authorities, and that the Infirmary derives its main support from the contributions of the charitable. The argument addressed to us insists that these three institutions, notwithstanding the large

amount of charity they annually extend, are not charitable institutions, because they receive pay from a class of patients able to pay, and desire to avail themselves of well-equipped institutions where the sick can receive proper attention. It strikes us as a narrow construction to hold that these institutions are not to be deemed charitable, because unable to bear the whole expense of taking care of the indigent needing medical attention, and of those whose straightened circumstances render them helpless to obtain the attention and medicines they need, the institutions make a moderate charge of those able to make return in some small degree for the shelter, medical treatment, medicines and food they receive. Nor can we see our way clear to hold that institutions established for charitable purposes, and serving the purposes to the extent shown by the record, are not to be decreed charitable, because they derive some revenue from the class called "pay patients."

From our examination of the decisions of other States it would seem that the circumstance that the institution takes pay from those who can pay, does not exclude the exemption given charitable institutions, if the institution claiming the exemption affords material aid to the indigent. In Missouri it has been held that a hospital whose object is charity, and whose profit derived from pay patients is devoted exclusively to charitable purposes, is within the exemption from taxation of property used for purposes purely charitable (10th Missouri Appeals, 263, cited in U. S. Digest for 1882, p. 854, No. 25). To the same effect is the decision in 27th Minn., p. 460, cited in the same Digest, p. 854, No. 29, and in 12 N. Y., 307, cited in the American Digest for 1891, p. 1475, No. 92. The exemption from taxation of charitable institutions is conferred in pursuance of an elevated public policy recognizing the obligations of humanity, as well as on the theory that such institutions relieve to some extent the State and city of caring for the indigent at the public expense (Cooley, p. 202, Consitution Art. 63). We must recognize in the light of the record that these institutions dispense a large measure of charity and fulfil, to a great extent, the duty of the city in respect to its poor. Our conclusion is the Infirmary, the Hotel Dieu, and the Retreat for the insane, are charitable institutions within the exemption from taxation of the Constitution.

In our view the same line of argument sustains the exemption of the Christian Woman's Exchange, of a character common to all large cities, we believe, and established to assist poor women. The institu-

tion furnishes meals to the indigent, receiving a moderate price from those who can pay, and the price of the meal is adjusted with no view to profit, but to provide for the expense of the meals which are prepared by the orphans the institution feeds. The institution provides a free library for those it is designed to aid, receives and sells articles made by the poor women to whom the proceeds accrue with the deduction of a small amount to defray the expenses of sale. Besides this, the institution provides rooms free of charge to the necessary employees, and to the young and unprotected females it affords a home at charges proportioned to actual expenses. The institution owns its building donated for the purpose, and it is used exclusively for that purpose. There is no leasing or use of the building for revenue, nor element of profit connected with it. In our view the exchange is purely charitable in its purpose and uses.

It is claimed by relators that the property owned by the Firemen's Charitable Association is liable to taxation. The argument is that the portion devoted to a cemetery is taxable, because burial lots are sold and fees are charged for opening graves and vaults. It is to be presumed that the framers of the Constitution were fully apprised that such charges are made by all cemeteries. The exemption is granted in the plainest terms to "all burial places." If the ground is leased for a burial place and revenues are derived by the owner, there is evident reason for the *proviso*. In that sense the *proviso* denies to the owner an exemption because of the use another makes of the property for a sacred purpose. The subject of cemetery exemption received the fullest examination by our predecessors, and they maintained the exemption of the Metairie Association (Metairie Association vs. Assessors, 37th Ann., 33). It is suggested in the brief that part of the property claimed to be exempted of the Firemen's Association is leased. We now deal with that which we understand is owned and established as a cemetery by the association. We are clearly of opinion that it is exempt from taxation, but not that property the association holds for other purposes.

We have given close attention to the exemption claimed for the property of the Young Men's Christian Association. The Legislature deemed the property worthy of the exemption, and undertook to grant it. The charter announces, as the corporate purpose, the improvement of the spiritual, social and intellectual condition of the young men of the city, and in consideration of the proposed work of establishing a

**232**     SUPREME COURT OF LOUISIANA.

State ex rel. Cunningham vs. Board of Assessors.

public library, the property of the association was to be free from taxation (Acts of 1872, No. 79). It is claimed that the association having established a library, that the legislative act constitutes a contract entitling the association to exemption. The Constitution of 1868, under which this ·charter was obtained, requiring all property to be taxed, gave the Legislature power to exempt property actually used for church, school or charitable purposes, and the real and personal estates of any library. It is claimed that the building owned by the association is exempt because it is to be deemed used for charitable purposes. The argument is that caring for the social, moral and spiritual condition of men is charity in the broadest sense, and that a place provided by the association where young men can assemble for religious exercises and be secluded from temptation, is a charity and a blessing. We wish we could yield to this reasoning. It demonstrates the capacity of the association to aid in the ́intellectual improvement of young men, and the usefulness of the association in promoting religious purposes. But, in our opinion, the argument fails to bring the association and its rooms within the exemption granted in the Constitution to property actually used for charitable purposes. We are dealing with a question of exemption under the imperative rule so often affirmed of strict construction. If the property of the association is to be exempt because of the tendency of the association to advance the intellectual and moral condition of young men, it would be the beginning of a latitudinous construction that far exceeds the bounds the Constitution imposes. The Constitution of 1879, like that of 1868, exempts "the real and personal estates of public libraries." We gather from the record the association has established such a library. To the extent the building is used for that purpose, in our opinion the property is exempt from taxation.

Another phase of this controversy is, whether all the property claimed to be exempted from taxation is essential for the purposes in aid of which the exemptions were granted. Undoubtedly an exemption from taxation is to be fairly construed so as to embrace all property necessary for the purpose in view of which the exemption is conferred. The converse of the proposition equally to be conceded is that property not at all essential to that purpose is not included in the exemption. The record shows that the assessors omitted from the rolls five squares of ground as constituting the Louisiana Retreat for the Insane. The insane asylum occupies one square. The testimony

is that two of the squares are used, or designed to be used, to afford the insane people the space for exercise, one of the squares for the women, and the other for the men. This seems favorable, but we are unable to perceive the basis on which the other squares are to be exempted, and we have given full attention to the testimony tending to show that the other squares are designed for raising vegetables and for pasturage for the uses of the Retreat. The Leland University, an educational institution, occupies two squares. The assessors have omitted two other squares as part of the institution. As we appreciate the testimony, the two squares are used for pasturing the cows of the institution and to afford the scholars the opportunity to learn gardening. There is authority in the decisions of other States that ground thus used is included in the exemption of the institution of learning. We are unable to reach that conclusion under our Constitution, and hold that land used to pasture cows and raise vegetables, though for the institution, or to afford scholars the means of acquiring a practical knowledge of gardening, can not be deemed included under the exemption of property used "exclusively" for schools and colleges under the scant terms of the exemption in our Constitution. On the same line of reasoning applied to a different subject, we are unable to appreciate that the exemption conferred on places of religious worship can "be held to include the bishop's residence." The Constitution did not use the word "church," which might be deemed restrictive, but employed the expression "places of public worship" to take in all places used for the worship of God. There the exemption stops. We have no privilege of construction to convert the residence of the pastor into a place of religious worship. We have given attention to testimony of the cloistered connection of the church, and the adjoining building in which the bishop and his family reside, and we have not overlooked the testimony that the vestry and associations connected with Christ Church hold their meetings in the building. We can not perceive that the use of the building for these meetings makes it a place of religious worship, nor that the cloisters or the term "see house," used in the testimony, make the building part of the church. It is, in our view, no part of the church or place of religious worship. Its uses may be deemed convenient or desirable for church purposes, but that, in our opinion, is not enough to sustain the exemption. Detached from the church and used as a residence by the bishop, we are constrained to hold the building is subject to taxation, and indeed the question is, in

effect, determined by the decision of our predecessors, that the parsonage or residence of the minister was not entitled to the exemption of places of religious worship (First Presbyterian Church vs. Tax Collector, 30th Ann., p. 259). The decisions of other States are to the same effect (Burroughs on Taxation, p. 136).

Another phase of this controversy is presented in the contention that the property of the St. Elizabeth Orphan Asylum, no part of the institution, but held for revenue applied for support of the asylum, as it is claimed, is omitted from the rolls, and relators assert all such property is liable to taxation. We understand the exemption relied on by the asylum is alleged to be conferred by the legislation prior to the Constitution of 1879, exempting all property of charitable institutions (Act No. 245 of 1850). That exemptions from taxation of the property of charitable institutions, not contained in the charters of the institutions, may be withdrawn at any time by legislative act or by constitutional provision, needs but the statement (Cooley on Taxation, Edition 1886, pp. 66-69, et seq.; Home of the Friendless vs. Rouse, 8th Wallace, 430; City of New Orleans vs. St. Anna's Asylum. 31st Ann., p. 292; Asylum vs. New Orleans, 105th U. S., p. 362; Grand Lodge of Masons vs. City, 44th Ann., 665; Grand Lodge vs. New Orleans, 166 U. S., 143). It is conceded that the charter of the asylum contains no exemption of its property. The question then is simply whether the Constitution of 1879, with its unqualified direction that all property shall be taxed, enumerating, with other exceptions not pertinent to this controversy, charitable institutions, accompanied with the *proviso* denying the exemption when the property is used or leased for corporate profit or income, does not entirely sweep away all exemptions previously granted of property no part of the charitable institution, but leased or used to produce revenue for the institution. In our view, this question will not bear discussion. The purpose to exclude from exemption the property held by the charitable institution for revenue is as distinctly marked as the exemption of the institution itself, and that purpose was evinced in our legislation and jurisprudence before, as well as after, the adoption of the Constitution of 1879. Act of 1844; Act of 1850, already cited; Act No. 164 of 1856, p. 147, Sec. 4; New Orleans vs. Judah Congregation, 15th Ann., 390; City of New Orleans vs. St. Anna's Asylum, 31st Ann., 292.

The Constitution of 1868, Article 118, differed in reference to exemptions from that of 1879.

State ex rel. Cunningham vs. Board of Assessors.

The provision in the Constitution of 1868 was that all property should be taxed, but gave the Legislature power to exempt property actually used for church, school, or charitable purposes. Our predecessors held in reference to taxes levied under that Constitution that it did not repeal exemptions to charitable institutions granted by previous legislation. These decisions, by a divided court, seem to be in conflict with previous decisions construing the exemptions in the Constitution of 1868, and are accompanied with vigorous dissents maintaining that all previous exemptions conflicting with the Constitution of 1868, were completely repealed or withdrawn by the very explicit provision of that Constitution (City of New Orleans vs. Poydras Orphan Asylum, 33rd Ann., p. 850; Orphan Asylum vs. Tax Collector, 37th Ann., 68). We are not embarrassed by these decisions. The taxes claimed in this controversy are those of the past three years. The right to exact the taxes subsequent to 1879, must be tested by the Constitution of 1879. Under its language, entirely different from that of 1868, confining the exemption pertinent to this controversy to the charitable institution itself, excluding in peremptory terms all property of the institution leased or used for revenue, the conclusion to our minds is inevitable, that the relators' contention in reference to this asylum property must prevail. The line of reasoning we deem persuasive in this case, is, in effect, the same as that which guided this court in the case of the Grand Lodge of Masons vs. City, 44th Ann., 672, to which we refer.

It is, therefore, ordered, adjudged and decreed, that the Board of Assessors place on the rolls for taxation, as required by the relators, the following property—that known as the Jesuits' College, in so far as it is used as a residence by the priests, not teachers in the college, the assessment of that part to be of the value thereof in proportion to the total value of the college building; all the squares adjoining the Louisiana Retreat, held by the Society of the Daughters of St. Vincent de Paul, save and except two of the said squares required for the exercise of the insane; the squares adjoining the Leland University, held by that institution; the property adjoining Christ Church, known as the Bishop's Residence, referred to in the petition; the property consisting of the row of frame houses on Magazine street, held by the Society of the Daughters of St. Vincent de Paul, no part of St. Elizabeth's Asylum; the property of the Young Men's Christian Association, except that portion used as a library, the value of that portion in

proportion to the value of the whole building to be exempted, the residue of the value of the building to be assessed for taxation; and finally all the property of the Firemen's Charitable Association, except that used as a cemetery; and in other respects it is ordered and decreed that the judgment of the lower court be affirmed, with costs.

MR JUSTICE WATKINS, MR. JUSTICE BREAUX and MR. JUSTICE BLANCHARD concur.

NICHOLLS, C. J., absent.

## PER CURIAM.

The judgment of this court having been reversed, touching the matter of the payment of the costs, it is ordered that the rehearing applied for in this case be granted with regard to the Hotel Dieu, the Touro Infirmary, the Louisiana Retreat and the Christian Women's Exchange; in other respects the application is refused.

## ON REHEARING.

BREAUX, J. Relator originally alleged that all buildings and property used exclusively for colleges and other school purposes are subject to taxation for the year 1898, and for three years immediately preceding, to-wit: The years A. D. 1895, 1896, and 1897.

Our decision dwells exclusively upon the construction to be placed on Article 207 of the Constitution of 1879. The reason and the logic of the decision are favorable to nearly all the exemptions claimed by respondents under that Constitution. Manifestly, an exemption from taxation for the year 1898 is to be construed by reference to the Constitution of 1898. Under the Constitution of 1879 the *proviso* of the article relating to exemption, reads: "Provided the property so exempted be not used or leased for purposes of private or corporate profit or income." Under that *proviso* there is much more to be said against the exemption claimed by the respondent than can be said in support of that position under the Constitution of 1898; that is, in support of the position that the enterprises here are exempt. The words "are used" were stricken out *ex industria* from the Constitution of 1898, and the provision we have quoted above now reads: "Provided the property so exempted be not leased for purposes of private or corporate profit or income." None of the properties to which the

decree, in our opinion, refers are leased for purposes of private or corporate profit or income. They are all owned by individuals or by corporations and are used exclusively for colleges and other school purposes. The word "exclusively", used in the article of the Constitution regarding exemption, has a particular meaning to which some attention has been given in our original opinion, and on which we desire to dwell for a moment. Unquestionably, if the property is not used exclusively for the purpose before mentioned, it is subject to taxation. It follows that all properties used for colleges are not exempt, but we have no reason to conclude; from the evidence before us, that Soule's College, Mrs. Seaman's School, and other educational institutions, are conducted in buildings and on property not "exclusively" used for colleges or schools.

We have already said, in substance, when the case was before us originally, if schools are conducted in properties substantially devoted to residences, they fall within the class of properties not occupied exclusively for schools, and should be taxed. This much regarding exemption under the Constitution of 1898.

We take up, for a moment, the question of exemption under Article 207 of the Constitution of 1879. We can add very little to that which has been said in our original opinion. It is a well known fact that institutions of learning in this State were not assessed and taxed under the Constitution of 1879. Before this suit was instituted, no attempt was ever made to place such property upon the tax roll. For nearly two decades they were not taxed. The law under which the tax is claimed has been repealed and some changes made, as we have before stated. Now that the old exemption law is changed in an important particular, it would require, we think, an unusually strong case to justify us in holding at the eleventh hour, as it were, in the history of that exemption under the Constitution of 1879, that a tax was due in all these years on all property exclusively used by schools and colleges, and that now only those here named as respondents and taxpayers are to be held to the payment of the tax for those years. The many years of silence, under the Constitution of 1879, is a contemporaneous exposition of the law. A contemporaneous is generally the best construction of a statute. It gives the understanding of a community of the terms made use of by a Legislature. If there is ambiguity in the language, the understanding and application of it when the statute first comes into operation, sanctioned by long ac-

quiescence on the part of the Legislature and judicial tribunals, is the strongest evidence that it has been rightly explained in practice. "A construction, under such circumstances, becomes established law, and, after it has been acted upon for a century, nothing but legislative power can, constitutionally, effect a change" (Sedwick on Statutory Construction, p. 213). In leaving this branch of the subject, we quote the terse and admirable maxim of the Civil Law, *"Contemporanea expositio est fortissima in lege."*

Relators also complain of our decree because, under it, the Hotel Dieu, Touro Infirmary, Louisiana Retreat, and Christian Woman's Exchange are held exempt. Relators say, in their brief for a rehearing, that the use and character of each of these institutions are similar and may be treated together, but they dwell more particularly on the exemption of the Christian Woman's Exchange. The record does not disclose that any of these institutions are carried on with a view to profit. The object, we are informed by the testimony in each case, is charity. Their doors are open to the needy, and the amounts they collect from those patients who are amply able to pay are expended exclusively for charitable purposes.

As relates to the Christian Woman's Exchange, it is described in its charter as a charitable institution only and exclusively. It makes no profit of any kind. Every cent it collects is expended in carrying out the purposes of its organization. None of these enterprises are mercantile establishments, as we are informed, paying large revenues to favored employees. As relates to the Christian Woman's Exchange, we insert here as apposite the *syllabus* of the case in City of Philadelphia vs. Women's Christian Association, 17 Atlantic Reporter, page 475. "The Women's Christian Association of Philadelphia is exempt from taxation as an institution 'of purely public charity' under the laws exempting the property of all institutions 'founded,' 'endowed' and 'maintained' by public or private charity. Notwithstanding its revenues are, to some extent, derived from payments for board and lodging by the young women for the benefit of whose temporal, moral and religious welfare the association exists, such revenues are not intended as a source of profit and being, in fact, insufficient to defray expenses, the annual deficit being made up by voluntary contributions." The *syllabus* covers the principles laid down in the decision. We refer by quoting the *syllabus* only because it accords with the views expressed by us before we had read the opinion.

In course of time, it may be that enterprises organized only to carry out charitable purposes will extend their operations so as to become businesses in the interest of owners or employees. It will then become necessary to hold them bound for taxes.

With the evidence before us, we are not inclined to find that the institutions are not charitable, the evidence showing that they are charitable. All the testimony leads one to that conclusion. Every institution owes taxes, save those carried on exclusively for charity and the relief of those suffering. In order that there may not be any abuse in this respect, for we realize that it is an easy matter to extend the purposes of these institutions so as to get profit and benefit for owners and employees, we limit our decision as applying only to those years aforestated, and we intend that it shall be viewed and considered as exclusively *sui generis*.

Our decree heretofore condemned relators to pay costs. This must be changed, for the reason that the State pays no costs in her own courts, unless under special provision. The relator and the assessors, respondents, represented the State. Neither, as representing the State, can be held for the costs. The case must be considered as one for which the State alone incurred costs, for which she can not be held.

It is now ordered, adjudged, and decreed, that the Board of Assessors place on the rolls for taxation only such property as heretofore was decreed should be taxed, and that in this respect, and in every other particular, our original decree remain unchanged, and be in full force and effect save as to the costs not due by any one from whom they can be collected under the law.

The application set out, on rehearing, is denied.

BLANCHARD, J., dissenting.