Statement of the Case.
MONROE, C. J.
Plaintiff is a Missouri corporation, doing business in Louisiana, with an office, declared for the purposes of that business, in the town of Oakdale, parish of Allen, and its principal domicile is Kansas City, Mo. It operates a saw and planing mill in the town, and owns large bodies of land in the parish mentioned, and brought this suit in February, 1919, contesting in certain respects the assessment of that property for the state and local taxes of 1918, alleging that it returned the same for assessment as required by law, upon fair and just valuations, and has paid the taxes due upon the basis of said return, and it prayed for an injunction, restraining the collection of amounts demanded, in excess of that so paid and based upon assessments, which it alleges are excessive and illegal, the specific grounds of complaint relied on being, in substance, as follows: That plaintiff made its return for assessment on March 28, 1918; that the police jury, sitting as a board of reviewers, held its sessions from June 3d to June 12th, inclusive, and on the 12th notified plaintiff to appear on the 25th and show cause why certain definite increases in the valuations appearing on its return should not be made; that plaintiff appeared, through its representative, on the 25th, for the purpose of protesting against said increases ; that the meeting was adjourned to July 16th, when it again appeared and made its protest, but without avail, the board having then ordered the increases to be made in accordance with its notices, and, having then adjourned, has not since convened. That by Act 140 of 1916, as originally passed and as amended by Act 211 of 1918, the power to fix the date on which police juries shall convene as boards of reviewers is vested in the board of state affairs, and can be fixed only after that board has instructed the assessors as to the valuations placed by it upon property returned for assessment; that it had fixed neither June 25th nor July 16th for such convening, and the members of the police jury and the assessor were aware of that fact; hence the meetings and the ac- *873 lion taken thereat were illegal, not binding on plaintiff (who was ignorant of the lack of authority), and were disregarded by the taxing officers, including the assessor, who did not extend upon his roll the increased valuations so made, but in lieu thereof extended valuations, involving still further increases thereafter, arbitrarily and without notice to plaintiff, • ordered by the board of state affairs; and that the taxing officers are now estopped to set up said valuations made by said board of reviewers:
That plaintiff is informed that, on or about August 24th, the board of state affairs instructed the assessor to submit said valuations, as increased by it, to the board of reviewers for its approval or disapproval, with due notice to plaintiff of its final action; but that the police jury did not thereafter sit as a board of reviewers, or take action on said increased valuations, and that plaintiff received no notice thereof until January 80, 1919, when it attempted to pay its taxes, and that the assessment based thereon is therefore illegal and void.
It is further alleged that a certain assessment of $25,000 upon “credits” ordered by the board of state affairs is wholly unauthorized, for the reason that the credits referred to arise from sales made by plaintiff, in Kansas City, to persons residing or doing business outside of this state, and concerning which its agent in Louisiana had no function to perform, except to ship the products sold to the purchasers at their places of residence or business.
Defendants for answer affirm the correctness and validity of the assessments complained of, deny that the valuations fixed upon property by the owner are binding upon the state or its assessing officers, and allege that such valuations are furnished only for information, and may be disregarded at any time. They specially deny that there is any attempt to deprive plaintiff of its property without due process of law, and allege that now in this case full, complete, and ample opportunity is afforded it to show, if it can, that the assessments of which it complains are excessive, unjust, or otherwise illegal.
The court a qua gave judgment annulling the assessment for state taxes, in so far as based upon valuations exceeding those returned by plaintiff, recognizing that plaintiff has paid the taxes due according to said valuations, and that it owes the state no taxes on the property in question for the year 1918; annulling in toto the assessment for both state and local taxes upon the item of “Credits” ; annulling the assessment for local taxation, as based upon the increased valuations ordered by the board of state affairs, but recognizing as valid the assessment for local taxation of all the property in question (save the item of credits) as based on the increased valuations placed thereon by the police jury sitting as a board of reviewers; recognizing the payment made by plaintiff as on account thereof; directing that an injunction issue, on plaintiff’s giving bond, restraining the collection of all taxes the assessments of which are thus annulled, and that the inscriptions thereof be canceled; awarding the attorney for the tax collector a fee of 5 per cent, on all taxes ordered collected under said judgment.
Opinion.
Articles 225 and 226 of the Constitution, amended as proposed by Act 168 of 1916, contain the following provisions:
“Article 225. Taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax, and property shall be taxed in a manner directed by law; provided, that the valuation of property for the assessment of state taxes, levied by the General Assembly and by this Constitution, may be different from the valuation fixed for all other purposes; provided, further, the assessment of all property shall never exceed the actual cash value thereof; and, provided, further, that *875 the taxpayers shall have the right of testing the correctness of their assessments before the courts of justice.”
“Article 226. There shall be and is hereby created a board of state affairs whose duty it shall be to assess, for state purposes, all taxable property throughout the state of Louisiana. It shall have such authority relative to state assessment, budget, income and expenditure as may be conferred by the General Assembly. * * * Act No. 140 * * * for the year 1916, on this subject-matter, shall go into effect * * * on the first day of January, 1917.”
The act thus mentioned (section 1, section 10, subds. 1-4, 9, 11, and sections 13-15) abolishes, the state board of appraisers and state board of equalization; provides that the state board of affairs shall succeed to their powers and duties in so far as not inconsistent with the act; authorizes the state board of affairs, for the purposes of state taxation, to “fix” (or, as it-may be interpreted, estimate) the value, not to exceed the actual cash value, of all taxable property in the state, leaving to the lawful authorities of each parish or other subdivision vested with taxing power full liberty to do likewise, in the matter of local taxation, with respect to taxable property within their respective jurisdictions; and also authorizes the board and those authorities to base their respective assessments upon such percentages of the actual cash values, as fixed or estimated by-them, as they deem fit, subject only to the condition that the percentage adopted by a parish, etc., shall not fall more than 25 per cent, below that adopted by the state board. The act further authorizes the board to fix the time when the assessors shall close their books, and deliver to it copies, or abstracts, of their rolls for corrections to be ordered by it; to extend such corrections on the rolls; to fix the time when the extensions shall be concluded, when the assessor shall place them before the police juries, sitting as boards of reviewers, and when the police juries shall so sit:
“Provided, such time shall be uniform throughout the state, and provided that all notices required by law shall be issued to all concerned for the examination of rolls by the taxpayers, or for consideration by the parish board of reviewers, shall not be abridged; nor shall the proceedings thereupon or thereafter be altered so far as correcting the valuations of property for local purposes may be concerned: Provided, further, that if the state board shall change such dates as, now fixed by law, special notice thereof shall be given by the proper authorities in addition to the usual notice, in a form to be prepared by the board.”
Section 13 declares that the actual valuation placed on property, for the purposes of state and local taxation, respectively, shall not be affected, the one by the other, save with the assent of the taxing authorities, except that current and back taxes, on property previously omitted, shall be assessed at the valuation fixed for state purposes, but according to the percentage adopted for local purposes.
Section 14 provides:
“That when the assessment rolls furnished * * * to the state board shall have been returned to the assessors and they shall have extended upon the rolls the valuation of property for purposes of state taxes, as directed by the state board, they shall be open for inspection by the taxpayers, for a period not less than that now fixed by law; and during such time, or while the same are in the hands of the board of reviewers, for local purposes, any taxpayer may object to the amount fixed upon his property as its actual cash valuation by the state board; and such objection shall be made and disposed of as hereinafter set forth.”
Section 15 provides that the police jury, sitting as a board of reviewers for parish assessments, shall also sit for the review of 'assessments by the state board, of property not heretofore assessed by it, that appeals in such matters to the state board shall be determined on or before August 1st, and that the complaining interests shall have until November 1st, for a resort to the courts, “after which they shall not have that right.”
And section 16 provides that the action of *877 the state board, after considering the recommendation of the board of reviewers, shall be final. The domicile of the state board is fixed at the state capital, and it is required to keep open for business every day, Sundays and legal holidays excepted. Act 211 of 1918 purports to amend and re-enact sections 10, 12, 13, 15, of Act 140 of 1916. We find no amendment to section 10 or 12 that is material to this case. Section 13, as amended and re-enacted, reads as follows:
“That the actual cash value of all property fixed by the board of state affairs for state assessment purposes shall be the actual cash value for all purposes; provided, that any taxpayer shall have the right to test the question of the actual cash value of his property before the courts of the state.”
About the only change of importance made in section 15 is the fixing of the date for the decision of differences between the state board and the board of reviewers as October 1st, instead of August 1st. Other dates, fixed by pre-existing statutes, and which the state board has not exercised its authority to change, appear to be as follows:
By Act 182 of 1906 (section 3) the taxpayer is required to make his return for assessment prior to April 1st of each year; (section 4) the assessor is required to complete his “listing” and “estimation” prior to May 1st and immediately thereafter to give 10 days’ notice, by publication, that the lists will be exposed for inspection and correction for 20 days from the expiration of the publication, after which, they are to be delivered to the police jury, sitting as a board of reviewers, such sitting to begin (Act 194 of 1906) on the first Monday in June, or as soon thereafter as possible. When the board of reviewers has completed its work, the assessor is required to prepare his assessment rolls (until so prepared, called “assessment lists”) in triplicate, without extending any figures or valuations thereon (Act 220 of 1910, § 1); and (section 2) on or before June 30th to forward an abstract thereof to the auditor. The board of equalization (to the powers and duties of which the board of state affairs has, to a certain extent, succeeded) was required (Act 220 of 1910, § 3) to meet, at the state capital, on the second Tuesday in July, examine the abstracts, forwarded to the auditor, and order such changes as it was competent and proper for it to order; upon notification by the auditor of which action the assessor was required to complete his roll in accordance therewith, and as soon as possible before September 1st (Act 170 of 1898, sec. 30) deposit the triplicates in the offices of the recorder of mortgages, tax collector, and state auditor, respectively. Act 170 of 1898, § 24, No. 130 of 1902, § 2, and No. 63 of 1906, § 1, declares that no valuation made by the assessor shall be increased by the board of reviewers, unless the taxpayer is served with notice to appear, within 5 days, and show cause why such increased assessment should not be made. Actions in courts to correct assessments are required to be instituted prior to November 1st of the year in which the assessments are made.
The board of state affairs is authorized (by Act 140 of 1916 and 211 of 1918) to change the dates hereinabove mentioned, or most of them, upon giving notice, but it is not shown in this case that it has taken such action, or given the required notice with respect to the taxes of 1918, or, if it has, that the police jury of the parish of Allen has been convened on that subject, upon dates other than those fixed by the board, although there is considerable allegation and argument to that effect. So far as disclosed by the records, the police jury, sitting as a board of reviewers, has regulated its action in the premises in conformity to the law, having convened in the capacity last mentioned on the first Monday in June, as required by Act 194 of 1906, and proceeded with its work of reviewing the local assessments until that *879 work was completed, as, in our opinion, contemplated by that act; the adjournments, from time to time, with a view of obtaining further information and affording the taxpayers opportunities to make their protests, being well within its authority. It was therefore entirely competent for it, on June 3d, the day of its first meeting, or June 12th, or June 25th, or July 16th, days to which it adjourned, to order- the increases of the local assessments, as alleged by plaintiff, of which plaintiff complains, and concerning which it seems to have fallen into a slight error as to the order, or manner, in which the increase was effected. The two notices, which were sent by the board of reviewers, on June 12th, are, with the exception of the items the valuations of which were increased, ipsissimus verbis, the same. They read, omitting dates, addresses, and signatures, as follows:
“You are hereby notified that your assessment has been raised as follows. * * * You are requested to appear before the police jury of Allen parish and show ■ cause why the above raise in your assessment should not be made, on June 25th, 1918, at 10:30 o’clock a. m.”
[1-3] Our examination of the various provisions of law, constitutional and statutory, bearing upon the subject, has failed to disclose any authority in the board of state affairs, or in the assessor; to change the assessment thus made, for the purposes of local taxation, by the police jury, sitting as a board of reviewers, and it is admitted (or undisputed) that the police jury of the parish of Allen held no meeting, as a board of reviewers, with regard to assessments for the local taxes, or otherwise, after the meeting of July 16th, when the increased assessment last above mentioned is alleged (by plaintiff) to have been made. The powers conferred on the board of state affairs in tax matters are confined in terms to those relating to state taxes. The power of the assessor in those matters is subordinated to that of the police jury, sitting as a board of reviewers. When, therefore, the board of state affairs directed the assessor (on August 24th, as alleged and proved) to increase plaintiff’s assessment, on certain items, beyond that which had been made by the police jury, sitting as a board of reviewers, and to add thereto the .item of “credits,” and the assessor made the extensions on his roll, as applicable to the assessment for local as well as state taxation, it seems probable that he misconstrued his instructions, and in any event it is quite clear that he was utterly without authority to change the assessment for the purposes of local taxation which had been made by the board of reviewers, from which it follows that, in legal contemplation and for all the purposes for which it was made, that assessment remains unchanged, authorized, and valid, and that, as this suit was not instituted on or before November 1, 1918, plaintiff has no standing for its prosecution. True it is that, as the changes made at the instance of the board of state affairs for the purposes of state taxation (being the only purposes for which that board was authorized to make or control assessments) were not ordered until August 24, 1918, and, as plaintiff had received no information concerning them until it attempted to pay its taxes on January 20,1919, it could not have been expected to institute its suit for correction prior to November 1, 1918; hence, \jhen the suit was instituted, in February, 1919, the taxing authorities, by way of plea in avoidance, waived any objection that they might have urged upon the ground of delay, and opened the door' to such evidence as plaintiff chose to offer, as tending to show that the assessments, as so increased, were excessive. In so far, however; as the assessments for local taxes were concerned, the door had been closed, by law, and neither the defendants nor the courts had the power *881 to open it; for, plaintiff, having been informed, on July 16th, that the board of reviewers — the final authority upon the subject, save the courts — had completed, by increasing, those assessments of its property, and, having allowed the last day of the period prescribed by law for the bringing of a suit for reduction to come and pass without bringing such suit, had lost that right; and the statute declaring its forfeiture contains no provision authorizing its revival by any subordinate authority; nor would it, in our opinion, be admissible or consistent with the proper administration of justice, as between the state and its citizens, in the matter of the assessment and collection of taxes, that .the statutes regulating that matter should be so construed as that the assessing and collecting officers should be at liberty to discriminate between taxpayers, and say to one, Your suit for reduction has been brought too late, and you cannot be heard, and to another, similarly situated, You shall have a hearing. If, under the law, the taxpayer is entitled to a hearing, no one can deny him that right; and if under the law he is denied that right, no one can confer it on him.
[4, 5] The assessment for state taxes, as increased by the board of state affairs, is null, by reason of the failure of the authorities to give the notice and afford plaintiff the opportunity to be heard that the law requires; and in our opinion, the addition by the board of state affairs of the item of “credits” is null for the same reason. Our learned brother of the district court, to whose able and carefully prepared opinions on the original hearing and on the new trial granted by him we are much indebted, reached the conclusion on the new trial that, the item of “credits,” having been added as “omitted” property, its assessment should not be included in the assessment, for state purposes, annulled for want of notice, and therefore gave it separate consideration and held it to be null for want of jurisdiction in the assessor, on the ground the credits have no situs in this state. It appears to us; however, that the item in question, like the other valuations made by the board of state affairs, falls within the terms and meaning of section 14 of Act 140 of 1916, which seems to apply to all such valuations, and to require that, after the return of the roll by the board to the assessor, it shall be open to inspection by the taxpayer, etc., and also within the meaning of section 15 of that act, as amended and reenacted by Act 211 of 1918, declaring that, as to “property not heretofore assessed by the state board of appraisers” (which, as we take it, includes omitted property), the board of reviewers shall “likewise sit” and consider objections and complaints by taxpayers to the assessments as made by the board of state affairs, etc.; and hence that where, as in this instance, the opportunities have not been afforded to the taxpayers, and the consideration has not been given to the assessment by the board of reviewers, as thus required, either the taxpayer or the taxing authorities may justly complain that the matter is not ripe for presentation to a court, which in such case is an appellate tribunal, or to be considered by such tribunal on its merits. Whilst, therefore, we agree with the trial judge that the assessment of credits should be annulled, we do so for the reasons above given, and without any expression of opinion as to the jurisdiction of the proper authorities to assess the item in question. We are also of opinion that the judgment appealed from goes rather far in decreeing (the payment made by plaintiff on the valuations returned being .recognized) that “plaintiff owes the state of Louisiana no taxes on said property for the year 1918,” What we find in this case is that the proper steps have not been taken to make a valid assessment of the state tax for which, under the Constitution and laws of the state, plaintiffs’ proper *883 ty should be made liable, in order that it may bear its just proportion of the expenses of maintaining the government by which it is protected; but the failure of the officers, charged with that function, to assess the tax in such manner as that its collection may be enforced, does not relieve the property of the debt. We apprehend that there may he another assessment, and at all events that the rights of the state in that respect should be reserved, and they will be so reserved by our decree.
It is therefore ordered that the judgment appealed from be amended and set aside in so far as it may be construed to hold that plaintiff owes no taxes to the state of Louisiana upon the property involved in this litigation for the year 1918, and that the taxing authorities of the state and parish are without jurisdiction to assess the “credits”-placed on the roll by direction of the board of state affairs, and that in those respects the rights of the parties, plaintiff, defendant, state, and parish be reserved. It is further ordered that in all other respects said judgment be affirmed; the costs of the appeal to be paid by plaintiff.