**25 So.2d 596**

**STATE ex rel. UNITED SEAMEN'S SERVICE, Inc., v. CITY OF NEW ORLEANS et al.**

**No. 38063.**

March 18, 1946.

Fred S. LeBlanc, Atty. Gen., Bertrand ·I. Cahn, Sp. Asst. Atty. Gen., and Chas. E. Cabibi, Atty., La. Tax Commission, Francis P. Burns, City Atty., Walter B. Hamlin, Asst. City Atty., and Martin E. Kranz, Atty., Bd. of Assessors, Orleans Parish, all of New Orleans, for respondents and appellants.

Isaac S. Heller and Leopold Stahl, both of New Orleans, for relator and appellee.

O'NIELL, Chief Justice.

This is a mandamus proceeding to cancel a tax assessment. The suit was brought by the United Seamen's Service, Inc., against the City of New Orleans, the Board of Assessors for the Parish of Orleans, the Louisiana Tax Commission and the State Tax Collector. The property on which the assessment was levied is the Carol Hotel in New Orleans and its furniture and equipment. The relator claims that the hotel and its furniture and equipment are devoted exclusively to charitable undertakings, and are therefore exempt from taxation under the provision in Section 4 of Article X of the Constitution, exempting from taxation all property devoted to charitable undertakings.

The taxes for which the assessment was levied are the ad valorem taxes for 1944, 1945 and 1946. The defendants pleaded that the suit was premature so far as the taxes for 1946 were concerned because the suit was instituted before the assessment rolls for that year were filed in the office of the clerk of court, and in fact before the rolls were completed and certified by the Louisiana Tax Commission. It is provided in Section 2 of Act 39 of 1922, which statute prescribes the manner and time in which a taxpayer may sue to contest the correctness or legality of any tax assessment, that no suit shall be instituted for such purpose before the assessment rolls are filed in the office of the clerk of court, nor later than sixty days after the filing of the rolls. The relator conceded that the suit was premature so far as the taxes for 1946 were concerned. Hence the plea of prematurity is not an issue in the case.

The suit was filed on August 31, 1945, that is, more than 20 months after the assessment rolls for the year 1944 were closed and more than 19 months after the taxes for that year were due,—more than 10 months after the assessment rolls for 1945 were closed and more than 7 months after the taxes for that year were due. The defendants filed three pleas of prescription, one based upon Section 8 of Act 227 of 1936, one based upon Section 8 of Act 18 of the 2d Extra Session of 1934, and one based upon Section 2 of Act 39 of 1922. The pleas of prescription were overruled, and after a trial of the case on its merits the court gave judgment declaring that the relator was a charitable organization and

that the Carol Hotel and its furniture and equipment were devoted exclusively to charitable undertakings and were therefore exempt from taxation under the provision of Section 4 of Article X of the Constitution.

Section 8 of Act 227 of 1936, which is the basis for the first plea of prescription, provides that all taxpayers shall have the right to test the correctness of their assessments before the courts, provided that any suit for that purpose shall be brought before the 1st day of January of the year in which the assessment is to become effective, or within thirty days after the filing of the assessment rolls if they are not filed at least thirty days before the 1st day of January. This section seems to refer only to a suit to correct an assessment so far as the valuation of the property is concerned. If the statute is otherwise applicable to a case where the legality of an assessment is contested, as well as to a case where the correctness of the amount of the assessment is contested, the statute is subject to the rule, which we shall refer to more particularly hereafter, that if an exemption from taxation is granted by a provision in the Constitution the exemption is not subject to limitation by an act of the Legislature, or otherwise than by a constitutional amendment.

The statute on which the second plea of prescription was founded, namely, Section 8 of Act 18 of the 2d Extra Session of 1934, has reference only to a suit to test the correctness of any change made by the Louisiana Tax Commission in any assessment. The statute authorizes the

Louisiana Tax Commission to correct or change assessments made by the tax assessor, and section 8 of the act provides that a suit to test the correctness of any such change in an assessment must be brought within thirty days after the date of the written instructions of the tax commission ordering the change. If this section were otherwise applicable to this case it would be subject to the objection which we have mentioned,—that when a tax exemption is granted by the Constitution it cannot be taken away or limited by an act of the Legislature, or otherwise than by an amendment of the Constitution.

Section 2 of Act 39 of 1922, on which the third plea of prescription was founded, refers to a suit contesting the legality of an assessment as well as to a suit contesting the correctness of an assessment. The section provides, not only that such a suit shall not be filed before the assessment rolls are filed in the office of the clerk of court, but also that such a suit shall not be filed later than sixty days after the date of the filing of the rolls. The statute was superseded by Act 97 of 1924, so far as property situated in the parishes other than the Parish of Orleans is concerned; from which it may be inferred that Act 39 of 1922 is applicable only to property situated in the Parish of Orleans. And, from the fact that the act refers to suits to test the legality of an assessment, as well as to suits to test the correctness of an assessment, it may be inferred that the act would be applicable to this suit, if the exemption claimed were not founded upon a provision in the Constitution itself.

■ A statute of limitation which limits the time within which a suit may be brought to correct the valuation of the property assessed, but which does not specifically limit the time within which a suit may be brought to test the legality or validity of the assessment itself, is not applicable to a suit to test the legality or validity of an assessment. This distinction is recognized in the following cases. Oteri v. Parker, State Tax Collector, 42 La.Ann. 374, 7 So. 570; Taylor Bros. Iron Works Co. v. City of New Orleans, 44 La.Ann. 554, 11 So. 3; Morgan's Louisiana & T. R. & S. S. Co. v. Pecot, 50 La.Ann. 737, 23 So. 948; Corwell & Spencer Lumber Co. v. Lafleur, 137 La. 772, 69 So. 170; Marston v. Elliott, 138 La. 574, 70 So. 519; Soniat v. Board of State Affairs, 146 La. 450, 83 So. 760; Constantin Refining Co. v. Day, 147 La. 623, 85 So. 613; Bowman-Hicks Lumber Co. v. Oden, 147 La. 870, 86 So. 313; Louisiana Long Leaf Lumber Co. v. Vines, 150 La. 311, 90 So. 660.

■ But, where a tax exemption is granted by the Constitution, the time within which a suit may be brought to declare the property exempt from taxation cannot be limited by an act of the Legislature. Taylor Brothers' Iron Works Co. v. City of New Orleans, 44 La.Ann. 554, 11 So. 3; Soniat v. Board of State Affairs, 146 La. 450, 83 So. 760. In the Taylor Brothers' Iron Works Case the decision is expressed, accurately in the syllabus, thus:

"When the assessment is null and void, being in contravention of the constitution, the nullity of the assessment can be urged at any time."

This distinction, between statutes of limitation on the right to sue to annul an assessment, and statutes of limitation on the right to sue merely to reduce the amount of an assessment, is drawn clearly in Soniat v. Board of State Affairs, 146 La. at page 456, 83 So. at page 762, thus:

"Where there is an alleged assessment of property that is exempt by law from taxation, or is not within the territorial jurisdiction of the assessor, * * * the limitation of time within which an action may be brought for its correction is inapplicable, and an action in nullity may be brought, without regard to such limitation; since such alleged assessment is not an assessment within the contemplation of the law, is not, and can never become, the basis for the levy of a valid tax, and may be annulled and canceled from the records, as may any other unwarranted incumbrance upon a title. But where officers charged with that duty have made and completed an assessment for the taxation of property which is subject to taxation and within their jurisdiction, there results an assessment which is presumed to be valid, unless and until, in a proceeding authorized by law and brought within the time and under the conditions prescribed by law, it be shown to fall below or to exceed some definite and determined limitation of valuation which the law has established; in which event, though it is not open to attack, in an action of nullity, as having no legal existence, it is open to correction, by an increase or reduction in the valuation, through the action above mentioned."

■ It seems, at first thought, that, inasmuch as an exemption of property from taxation, for being devoted to charitable undertakings, is a matter which can be established only by proof that the property for which the exemption is claimed is in fact devoted to charitable undertakings, the Legislature should have authority to put a time limit upon the right of the property-owner to claim such an exemption, even in a case where the exemption is granted by the Constitution. But, on second thought, it is obvious that the Legislature cannot by means of a statute of limitation restrict a property owner's right to claim a tax exemption granted by the Constitution. If the tax exemption claimed in any given case is well founded in fact the owner of the property should not be denied his constitutional right to establish the fact on which the exemption is claimed. On the other hand, in a case where it is not true that the property is devoted to charitable undertakings, there is no need for a statute of limitation or plea of prescription. Our conclusion is that the judge was right in overruling the pleas of prescription in this case.

■ On the merits of the case the facts leave no doubt that the Carol Hotel and its furniture and equipment are devoted exclusively to charitable undertakings, within the meaning of Section 4 of Article X of the Constitution. The United States Seamen's Service, Inc., is a nontrading corporation, organized under the laws of the State of New York. It was organized as a war measure in November, 1942. Its

purposes are summarized in the first paragraph of the second article of the certificate of organization, thus:

"The purposes for which it is formed are to promote and foster the welfare of the seamen and other personnel of the Merchant Marine of the United States and of the other United Nations, and to provide and maintain clubhouses and other facilities for their use, and recreational, medical, educational, religious, personal and other services for their benefit."

The United Seamen's Service operates two other hotels in New Orleans, namely, the Senator and the Carver, the latter one being devoted entirely to colored members of the merchant marine. The United Seamen's Service has been operating the Carol Hotel in New Orleans since January, 1943. The hotel was bought by United Seamen's Service on March 30, 1943. No part of the hotel is operated for profit. The only purpose is to render service to the members of the merchant marine who need the service.

The witnesses who described the method by which the hotel is operated were the Secretary of the United Community and War Chest and Director of the Community Chest, the Gulf Coast Regional Director of the United Seamen's Service, and the Senior Manager of the three hotels operated by the United Seamen's Service in the Port of New Orleans. These witnesses described the system as being similar to the operations of the Salvation Army, the Y.M.C.A, and the Y.W.C.A. The United Seamen's Service is a member of the United Community and War Chest and receives an allocation to cover the deficit each year in the cost of operating the hotel over the amount received from the members of the merchant marine who are able to pay small rates for their lodgings and for what food is furnished them from the cafeteria or so-called canteen. It is because the hotel makes a small charge for the accommodations afforded members of the merchant marine who are able to pay for their rooms that the defendants in this case argue that the hotel is not devoted exclusively to charitable undertakings.

The only purpose of charging those members of the merchant marine who are able to pay for their rooms is to make the hotel as nearly self-sustaining as possible and thus to make it possible to continue the services to the indigent members of the merchant marine. Besides providing overnight accommodations for accredited members of the merchant marine, the Carol Hotel provides a recreation program, gives dances and has other amusements for members of the merchant marine, and provides emergency personal services to impecunious members. When destitute members register at the hotel in the nighttime, and prove to the registration clerk that they are accredited members of the merchant marine, they are afforded room rent for the night, on signing an obligation for a small amount of room rent, without giving any security, and leaving it to their conscience to pay the obligation some day, if they are ever able to pay. In our opinion that system does not deprive the institution of the right to have its property classed as devoted to

charitable undertakings. The important fact is that no charge is made for any service rendered by the hotel except such charges as are necessary to continue the operation of the facilities, and to make the institution as nearly self-sustaining as it can be made. There are very few salaried employees. In fact there is no suggestion on the part of the defendants that there is any extravagance or unnecessary expenditure in the operation of the hotel. The recreational programs are conducted by a local committee of men and women who volunteer their services with purely altruistic motives. The fact that these motives are also patriotic does not make them less charitable. It was proven and is not contradicted that no profit is made or sought in any department of the hotel.

The law on this subject is stated fully in State ex rel. Cunningham v. Board of Assessors of the Parish of Orleans, 52 La.Ann. 223, 26 So. 872, 875. That was a mandamus proceeding brought by the attorney general to compel the board of assessors to assess certain property which the board had declined to assess for ad valorem taxes on the ground that the property belonged to "charitable institutions" and was therefore exempt from taxation by the provision in Article 207 of the Constitution of 1879, declaring that the property of "all charitable institutions" should be exempt from taxation. The several institutions owning the property intervened in the suit and claimed the exemption. It was shown that some if not all of the institutions in question received pay from patrons who were able to pay; and for that reason the attorney general contended that such institutions were not "charitable institutions" in the meaning of Article 207 of the Constitution of 1879. Answering the argument, with reference particularly to three of the institutions, the court declared:

"It strikes us as a narrow construction to hold that these institutions are not to be deemed charitable because, unable to bear the whole expense of taking care of the indigent needing medical attention, and of those whose straitened circumstances render them helpless to obtain the attention and medicines they need, the institutions make a moderate charge of those able to make return in some small degree for the shelter, medical treatment, medicines, and food they receive. Nor can we see our way clear to hold that institutions established for charitable purposes, which serve the purposes to the extent shown by the record, are not to be decreed charitable because they derive some revenue from the class called 'pay patients.' From our examination of the decisions of other states, it would seem that the circumstance that the institution takes pay from those who can pay does not exclude the exemption given charitable institutions, if the institution claiming the exemption affords material aid to the indigent. * * * The exemption from taxation of charitable institutions is conferred in pursuance of an elevated public policy recognizing the obligations of humanity, as well as on the theory that such institutions relieve to some ex-

tent the state and city of caring for the indigent at the public expense. * * *

"In our view, the same line of argument sustains the exemption of the Christian Woman's Exchange, of a character common to all large cities, we believe, and established to assist poor women. The institution furnishes meals to the indigent, receiving a moderate price from those who can pay; and the price of the meal is adjusted with no view to profit," et cetera.

On rehearing, in State ex rel. Cunningham v. Board of Assessors, 52 La.Ann. at page 238, 26 So. at page 879, the court referred again to the case of the Christian Woman's Exchange, compared it with the Women's Christian Association of Philadelphia, and quoted from the case of City of Philadelphia v. Women's Christian Ass'n, 125 Pa. 572, 17 A. 475, thus:

" 'The Women's Christian Association of Philadelphia is exempt from taxation as an institution "of purely public charity," under the laws exempting the property of all institutions "founded," "endowed," and "maintained" by public or private charity. Notwithstanding its revenues are, to some extent, derived from payments for board and lodging by the young women for whose temporal, moral, and religious welfare the association exists, such revenues are not intended as a source of profit, and being, in fact, insufficient to defray expenses, the annual deficit being made up by voluntary contributions.' "

The judgment appealed from is affirmed.