PAUL A. BONIN, Judge.
| ¶ Following their payment under-protest of taxes due on account of supplemental assessments on personal property and in order to recover the taxes paid to the sheriff/ex officio tax collector, a number of petroleum-producer firms[1] in Plaquemines Parish invoked the original jurisdiction of the district court in their dispute with the parish assessor. The Plaquemines Parish assessor, after engaging a private firm to assist him, had concluded that the producers failed to report personal property subject to ad valorem taxation, and he thus reached back for a three-year period with the supplemental assessments.
The central issue presented at this stage in the litigation by the cross-motions for partial summary judgment is the scope and extent of the district court’s jurisdiction, that is, its power and authority, to review the assessor’s supplemental assessments and to afford any relief to the taxpaying producers. The producers contend that, unless the district court itself has such authority, La. R.S. 47:1966 A deprives them of their right under La. Const. Art. 7, § 18 E to challenge the ^correctness of the supplemental assessments. The assessor and the other defendants respond that the producers, by failing to self-report the property subject to taxation, forfeited any right to challenge the correctness of the supplemental assessments.[2] The producers also contend that, in any event, the district court has the power and authority to review the assessor’s determination that property was omitted from the self-reporting form; and, they argue, the assessor wrongly decided that platforms, including well-protection platforms or key-ways, were not self-re *227 ported as part of the wells and were thus subject to supplemental assessments. The assessor and other defendants argue that because no platform, including a well-protection platform, is part of the well for ad valorem taxation purposes the producers’ failure to self-report any platform renders such unreported platforms subject to supplemental assessment.
In deciding the cross-motions for partial summary judgment, the district court ruled in effect that in exercising its original jurisdiction in this litigation it had no authority to consider any correctness challenge to the supplemental assessments and that La. R.S. 47:1966 A did not unconstitutionally deprive the producers of their right to such a challenge. The district court also ruled, however, that well-protection platforms or key-ways, as distinguished from other types of platforms, were not required to be self-reported separately from the well and were, thus, not subject to supplemental assessment.
1 ¡¡After our de novo review of these rulings, we agree with the district court’s evaluation of the scope and extent of its power and authority to review the supplemental assessments before it. We conclude that La. R.S. 47:1966 A constitutionally provides that a taxpayer who is required to self-report his personal property which is subject to ad valorem taxation and fails to do so forfeits his right to a correctness challenge of the resulting supplemental assessment. Consequently, the district court has no power or authority to review for correctness any supplemental assessment for such omitted property. But we also conclude that La. R.S. 47:1966 A does not purport to, and indeed does not, preclude a district court from exercising its original jurisdiction to review the assessor’s determination that a particular piece of property is subject to a supplemental assessment and, when appropriate, to invalidate a supplemental assessment. Such recourse by a taxpayer to the courts is a legality challenge and not a correctness challenge. And, in particular, we find as a matter of law that the district court properly applied the rules of the Louisiana Tax Commission and distinguished between well-protection platforms and other platforms for the purposes of determining which types the taxpayer must self-report separately from the well.
Therefore, we affirm the district court’s rulings on the cross-motions for summary judgment. We explain our decision in greater detail in the following Parts.
Jj?
In this Part we briefly summarize the history and procedural posture of this litigation.
A
By way of background, with respect to oil and gas properties, Louisiana has a self-reporting system that requires the owners of such properties to submit to the parish — using a document referred to as a LAT 12 form — a yearly listing of all of their properties situated within a given parish.[3] The producers maintain that they reported their properties to the assessor for the years 2006, 2007, and 2008, as required by law. The assessor prepared the tax rolls for those years based on the taxpayer’s reports, and certified them to the Plaquemines Parish Board of Review. The Louisiana Tax Commission subsequently certified the Plaquemines Parish tax rolls for the years 2006-2008. The sheriff issued tax bills for those years based upon the certified tax rolls, and the *228 plaintiffs remitted ad valorem taxes to the parish accordingly.
In 2008, the assessor engaged an Oklahoma company, Visual Lease Services, to perform a survey of oil and gas equipment located in Plaquemines Parish. In 2009, Visual submitted to the assessor a detailed report regarding oil and gas equipment located in Plaquemines Parish. Based on Visual’s report, the assessor issued supplemental tax assessments to several oil and gas production companies for properties he asserted they had failed to report for tax years 2006, |s2007, and 2008. The supplemental assessment included a ten per cent penalty on the value of the property determined to have been omitted by the taxpayer from its original tax form.
The supplemental assessments were based on La. R.S. 47:1966. The producers subsequently filed written challenges to the supplemental assessments by way of letters to the assessor, and the assessor denied the challenges. The producers then timely paid the supplemental assessments under protest.
B
In accordance with La. R.S. 47:1966 A, the producers appealed the assessor’s denial of their protests by filing the underlying lawsuits. Each producer filed two lawsuits against the present defendants. In their first set of petitions, each producer asked the trial court to strike the supplemental assessments from the tax rolls as invalid and hold that the ten percent penalty imposed by the assessor was unfounded. The plaintiffs’ initial petitions further asked the district court to issue a declaratory judgment that the supplemental assessment violates the Louisiana Constitution of 1974. In their second set of petitions, each plaintiff asked for a formal refund from the sheriff of the taxes paid under protest. These petitions reiterated the prior petitions’ requests for relief, but also asked the district court to issue a declaratory judgment stating that the assessor’s actions violated their constitutional rights to due process under the law, and failed to adhere to the requirements of La. Const. Art. 7, § 18 E.
_kC
Subsequently, the producers filed several identical motions for partial summary judgment. Similarly, the defendants filed several identical motions for partial summary judgment in each of the presently consolidated cases. The present consolidated appeals concern the district court’s common disposition of these motions, and the parties’ respective objections thereto.[4] *229 We briefly summarize the four motions, and the trial court’s respective rulings thereon, in the order in which they were filed.
The producers first filed motions for partial summary judgment with respect to the constitutional issue raised in their petitions. They argued that in mandating that supplemental assessments be appealed directly to the courts — thereby bypassing the Louisiana Tax Commission — La. R.S. 47:1966 violates the Louisiana Constitution’s requirement that the correctness of assessments be first reviewed by the parish governing authority, and then by the Louisiana Tax Commission. See La. Const. Art. 7, § 18 E.
On May 12, 2011, the district court signed a judgment denying the plaintiffs’ first motions for partial summary judgment, reasoning that the supplemental tax 17assessments at issue in this case involve omitted property, which is not susceptible to correctness challenges under Louisiana law; and since La. Const. Art. 7, § 18 E pertains to correctness challenges only, the provisions of that section are not implicated in this case.[5]
The defendants’ first motion for partial summary judgment asked the trial court to rule that the plaintiffs have forfeited their rights to contest the assessor’s supplemental assessment fair market value determinations of their allegedly omitted properties. The defendants argued that the plaintiffs lost the right to challenge the assessor’s fair market value determinations when they failed to report their respective properties on the appropriate LAT forms. The producers argued that the defendants’ motions were moot, because they are not challenging the assessor’s determinations of fair market value. Rather, the plaintiffs asserted that they were alleging that the assessor either mis-described or mislabeled their properties, or that the assessor failed to follow the Tax Commission’s guidelines for assessing the omitted property. The trial court signed a judgment granting the defendants’ first partial motion for summary judgment. The district court, in contemporaneously issued reasons for judgment, concluded that the plaintiffs are statutorily prohibited from challenging the assessor’s fair market value ^determinations with respect to property that is found to be subject to supplemental assessments.
The producers filed a second motion for partial summary judgment asking the trial court to decree that the parish assessor’s supplemental assessment process must adhere to the rules and regulations set out by the Louisiana Tax Commission, especially the Commission’s rule regarding the depreciation of oil and gas property. This motion also sought a decree that the assessor must follow the Tax Commission’s finding that well-protector platforms, or key-ways, are to be considered a part of the well, and assessed accordingly. Essential *230 ly the relief which the plaintiffs sought, if granted, would have nullified the assessor’s supplemental assessment of keyways or well-protector platforms because these items would thus have been included within the plaintiffs’ initial LAT 12 filings. The district court granted in part, and denied in part, the plaintiffs’ second motion for partial summary judgment, ruling in favor of the producers that, in light of a July 12, 2011 ruling by the Louisiana Tax Commission, well protector platforms are to be considered a part of the well for taxation purposes. Nevertheless, the district court denied the remainder of the producers’ motion, finding that Louisiana’s statutory scheme regulating the supplemental assessment of ■ omitted property does not allow the producers to challenge the assessor’s method of arriving at fair market value for allegedly omitted property-
The defendants filed a second motion for partial summary judgment in which they asked the district court to find that platforms used in the production, | ^storage, sale and transmission of oil and gas are separately assessed items of property under the Tax Commission’s rules and regulations. The defendants specifically asked the district court to dismiss the producers’ respective petitions insofar as they relate to the claim that their platforms were improperly assessed separately. Notably, the producers did not dispute that they owned platforms in Plaquemines Parish, but argued that their platforms were not subject to separate assessment, as such platforms are included as part of the costs of the well under Chapter 9, Section 907 of the Tax Commission’s rules and regulations. On July 26, 2011, the district court denied the defendant’s second motion for partial summary judgment concluding that a Tax Commission July 12, 2011 ruling established that well-protector platforms, or keyways, are to be assessed as part of the well for taxation purposes. Further, the district court denied the defendants’ request to dismiss the plaintiffs’ petitions insofar as they relate to claims that their platforms were improperly assessed separately.
All parties to the Bass Partnership and Clayton Williams Energy judgments filed motions for new trial with respect to the district court’s July 26, 2011, judgments. The defendants asked for a new trial with respect to the district court’s ruling that well protector platforms are to be assessed as part of the well for taxation purposes. Specifically, the defendants argued that while the district court’s ruling addressed the assessment of well protector platforms, it failed to address other types of platforms, such as production platforms. On the other hand, the producers asked for a new trial with respect to the district court’s ruling that | ,nLouisiana’s statutory scheme regulating the supplemental assessment of omitted property does not allow the producers to challenge the assessor’s method of arriving at fair market value for allegedly omitted property.
On September 27, 2011, the district court first granted the defendants’ motion by clarifying that while well protector platforms are to be assessed as part of the well for taxation purposes, other platforms, such as production platforms, are to be taxed separately. The district court also granted the plaintiffs’ motion for the limited purpose of clarifying its July 26, 2011 judgments. Specifically, the district court noted that the plaintiffs may not legally challenge the manner in which the assessor calculated depreciation in formulating the supplemental assessments.
D
The district court certified all foregoing judgments as final and appealable pursu *231 ant to La. C.C.P. art. 1915. We note, however, that only partial summary judgments which have been granted, are eligible for designation as final. See La. C.C.P. art. 1915 A(3). The denial of a partial summary judgment motion is an interlocutory judgment which is not eligible for designation as final and appealable. See Yokum v. Van Calsem, 07-0676, pp. 5-6 (La.App. 4 Cir. 3/26/08), 981 So.2d 725, 730. But, in the context of cross-motions for summary judgment, a party may obtain appellate review of the judgment denying its motion when it appeals the judgment which granted the opposing party relief on the issue. See Favrot v. Favrot, 10-0986, p. 2 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1102 n. 1. Thus, all parties’ appeals of the various aspects of the district court’s rulings are properly before us.
Specifically, the producers appeal the district court’s dismissal of their correctness challenges to the assessor’s supplemental assessments of the omitted properties. In doing so, the producers challenge both the district court’s exercise of jurisdiction over the dismissal of their correctness claims and the constitutionality of the supplemental assessment statutory framework. The producers further appeal those aspects of the district court’s judgments which ruled that Louisiana’s statutory scheme regulating the supplemental assessment of omitted property does not allow the plaintiffs to challenge the assessor’s method of arriving at fair market value for allegedly omitted property. The producers lastly appeal those aspects of the district court’s judgments which collectively hold that other platforms, such as production platforms, are to be taxed separately while well protector platforms are to be assessed as part of the well for taxation purposes.
The defendants appeal the district court’s judgments which collectively hold that well protector platforms are to be assessed as part of the well for taxation purposes.
II
In this Part we generally discuss Louisiana’s system for challenging ad valorem tax assessments and the critical distinction between legality challenges and correctness challenges in the context of a district court’s power and authority.
I12A
According to La. Const. Art. 7, § 1 A, “the power of taxation shall be vested in the legislature, shall never be surrendered, suspended, or contracted away, and shall be exercised for public purposes only.” Thus, the Constitution indicates that the legislature “shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.” La. Const. Art. 7, § 3 A. Similarly, the Constitution also provides a review process for a taxpayer to challenge the correctness of an assessor’s assessment. La. Const. Art. 7, § 18 E.
La. Const. Art. 7, § 18 A provides for the imposition of ad valorem taxes: “Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which, except as provided in Paragraphs (C) [concerning use value] and (G) [concerning special assessment levels], shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.”[6] La. Const. Art. 7, § 18 D sets out the method by which assessors are to value property that is subject to ad valorem *232 taxation. Specifically, each “assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor.” La. Const. Art. 7, § 18 D further provides that “[f]air market value and use value of property shall be determined in accordance |1swith criteria which shall be established by law and which shall apply uniformly throughout the state.”
The issues underlying this appeal arise out of Louisiana’s system for ad valorem taxation with respect to oil and gas properties, and its specific application by the Plaquemines Parish assessor to the plaintiffs’ properties. La. R.S. 47:2324 provides, in part, that each “assessor shall gather all data necessary to properly determine the fair market value of all property subject to taxation within his respective parish or district.” However, the “assessor may employ the use of self-reporting forms by property owners.” Id. This is the LAT 12 form. See Louisiana Administrative Code 61:V.903(A).
With respect to property omitted by a taxpayer, La. R.S. 47:1966 A, provides:
If any tract or lot of land or other property shall be omitted in the assessment of any year or series of years, or in any way erroneously assessed, it, when discovered, shall be assessed by the assessor or tax collector for the whole period during which the property may have been omitted or improperly assessed, and shall be subject to the state, parish, municipal, and levee taxes, which have been or may hereafter be assessed against the property in accordance with law. No back taxes for more than three years shall be assessed against omitted or improperly assessed property. Assessments of omitted or improperly assessed property shall appear upon a supplemental roll and be filed in the same manner as regular tax rolls. A notice by mail shall be given that the assessment roll is completed, and that it is exposed for examination in the office of the assessor whether the tax is on movable or immovable property, and that ten days are allowed the parties to make to the assessors any protest they may wish to urge against the assessment; in case of unknown owners, notice shall be published twice during a period of ten days in a daily newspaper published in the city of New Orleans, and in other parishes as provided hereafter. In case there is no protest the assessment without any further requisite or formality of any kind shall be final and conclusive on the parties assessed. In the event of any such protest, the decision of the assessors thereon shall be promptly made |Mand be final; the assessment without further formality and requisite of any kind shall be binding and conclusive on the parties assessed; however the parties assessed can appeal to the courts within five days from the decision of the assessor on the protest, which decision shall be deemed notice, and the delay of five days shall begin from the day of entry by the assessors of the words “appeal rejected” on the supplemental roll.
Accordingly, La. R.S. 47:1966 provides that an assessor may, upon discovery, prepare supplemental assessments on omitted or erroneously assessed properties for the past three years. La. R.S. 47:1966 further provides a mechanism whereby known and unknown owners of omitted or erroneously assessed pieces of property are to be notified of an assessor’s supplemental assessment. La. R.S. 47:1996 indicates that a supplemental assessment becomes final and conclusive in the event the taxpayer *233 fails to protest the supplemental assessment. On the other hand, La. R.S. 47:1966 also indicates that a taxpayer who wishes to protest the supplemental assessment must first make a protest with his assessor. In the event the assessor denies the protest, a taxpayer may then appeal the supplemental assessment to the courts.
Additionally, La. R.S. 47:1957 governs the listing and assessment of property in general, as well as the assessment of omitted property in particular. Section A provides, in pertinent part: “All taxable property in the state, except public service properties, shall be assessed by the several assessors. The assessors shall be responsible, under the supervision of the tax commission, for listing and assessing all property within their respective parishes, except such property as is subject to direct assessment by the tax commission.”[7] Section B further provides, |1Bin part: “All property subject to taxation shall be listed and assessed at the proper percentage of its fair market or use value as required by the constitution and laws of this state.” Section C gives parish assessors the right to conduct investigations into a property’s worth, conduct examinations under oath, and inspect books and records so as to correctly ascertain the fair market value of the taxable properties in his parish. Section D provides, in pertinent part: “If any person fails or refuses to submit a list of his property including any list requested under Subsection C, or fails to make oath to its correctness, in addition to all other applicable penalties, he shall be subject to the penalties provided for failure to report under R.S. 47:2829, and the assessor shall himself make out a list from the best information he can obtain and shall make his own valuations thereon.” Lastly, the version of Section E in effect at the time of the supplemental assessments provides, in pertinent part: “If the assessors find or have reason to believe that the list of taxable property furnished by any person is incomplete or incorrect, they shall add to the list of such property, which from the best information they can obtain, has been omitted or incorrectly described by the person signing the list. Additionally, the taxpayer shall be subject to all applicable penalties, including those provided for by R.S. 47:2329.”
| ifiMost importantly for the purposes of this appeal, La. R.S. 47:2329 provides that “[wjhenever any property owner fails to make any report required to be made under the provisions of this Act at the time such report becomes due, the property owner shall have no legal right or cause to question or contest the determination of fair market value by the assessor.”
B
Regarding the review procedure for the appeal of assessments, Louisiana constitutional and statutory law formulates *234 a two-track procedure a property owner must follow^ in challenging property tax assessments. See Triangle Marine, Inc. v. Savoie, 95-2873 (La.10/15/96), 681 So.2d 937. One track encompasses challenges to the “correctness of assessments” by the assessor and the other covers challenges to the legality of the tax levied. Accordingly, under our jurisprudence, challenges to ad valorem property tax assessments are categorized as either challenges to the “correctness of assessments” or challenges to the “legality of assessments.” ANR Pipeline Co. v. Louisiana Tax Comm’n, 02-1479, p. 5 (La.7/2/03), 851 So.2d 1145, 1148-1149. The nature of the challenge dictates the body in which our constitution grants jurisdiction to hear and resolve these disputes. Gisclair v. Louisiana Tax Comm’n, 09-0007, p. 5 (La.6/26/09), 16 So.3d 1132, 1135.
The provision establishing the assessment correctness challenge is found in the Louisiana Constitution at Art. 7, § 18 E, which provides: “The correctness of assessments by the assessor shall be subject to review first by the parish governing 117authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law.” Under this provision, district courts in correctness challenges are merely granted appellate jurisdiction. ANR Pipeline, 02-4179, p. 6, 851 So.2d at 1149. However, pursuant to La. Const. Art. 7, § 3 and the interpreting jurisprudence, legality challenges are to be filed directly in the district court.[8] Gisclair, 09-0007, p. 5, 16 So.3d at 1136; Triangle Marine, 95-2873, p. 4, 681 So.2d at 939; ANR Pipeline, 02-1479, p. 5, 851 So.2d at 1149.
The distinction between correctness challenges and legality challenges has been the subject of much jurisprudential discussion. In Morgan’s Louisiana & T.R. & S.S. Co. v. Pecot, 50 La.Ann 737, 742-743, 23 So. 948, 950-951 (La.1898), the Supreme Court reasoned that correctness challenges are directed at issues of regularity or correctness of the assessment, such as over-valuation and misdescription, while legality challenges are directed at issues involving claims that the assessment is void for radical defects that bring into question the existence of any valid assessment. Since Morgan’s, the Supreme Court has reaffirmed this distinction and further clarified its holding that any challenge seeking to correct a value, no matter how erroneous that value may allegedly be, but does not seek to annul the assessment in toto, is a correctness challenge under the law. See Gisclair, 09-0007, p. 6, 16 So.3d at 1136-1137.
| ^Likewise, any challenge that seeks to correct some aspect of the assessment is a correctness challenge if that challenge does not seek to annul the assessment in toto. Gisclair, 09-0007, p. 6, 16 So.3d at 1137. As the Supreme Court explained in Soniat v. Board of State Affairs, 146 La. 450, 83 So. 760, 762 (La.1919):
Where there is an alleged assessment of property that is exempt by law from taxation, or is not within the territorial jurisdiction of the assessor, or where the assessment has not been made by the assessor, or has not been completed, and in other like cases, the limitation of time within which an action may be brought for its correction is inapplicable, and an action in nullity may be brought, without regard to such limitation; since such *235 alleged assessment is not an assessment within the contemplation of the law, is not, and can never become, the basis for the levy of a valid tax, and may be annulled and canceled from the records, as may any other unwarranted incum-brance [encumbrance] upon a title. But, where officers charged with that duty have made and completed an assessment for the taxation of property which is subject to taxation and within their jurisdiction, there results an assessment which is presumed to be valid unless and until, in a proceeding authorized by law and brought within the time and under the conditions prescribed by law, it be shown to fall below or to exceed some definite and determined limitation of valuation which the law has established; in which event, though it is not open to attack, in an action of nullity, as having no legal existence, it is open to correction, by an increase or reduction in the valuation, through the action above mentioned.
Accordingly, a challenge to the validity of a tax on exempt property is a challenge to the legality, not the correctness, of the tax. State ex rel. United Seamen’s Service v. City of New Orleans, 209 La. 797, 25 So.2d 596, 598-599 (La.1946). A tax assessment on exempt property is illegal. Id.
Refining its prior jurisprudence, the Supreme Court in Triangle Marine indicated that these principles remain viable in distinguishing between the two types of assessment challenges at issue and noted that its prior cases, along with the Legislature’s usage, “illustrate that ‘correctness of assessment’ is a term of art, | ^referring to the right of the taxpayer to seek adjustments to the valuation of taxable property.” Triangle Marine, 95-2873, p. 5, 681 So.2d at 940. See also Westminster Management Corp. v. Mitchell, 525 So.2d 1171, 1173 (La.App. 4th Cir.1988) (“‘Correctness’ includes both the standard of true value and the uniformity and equality required by law.”); Capital Drilling Co. v. Graves, 496 So.2d 487, 492 n. 2 (La.App. 1st Cir.1986) (finding an assessment challenge to valuation is a challenge to correctness, not collection of a tax, and disputes are to be addressed to an administrative forum prior to judicial review). In Triangle Marine, the Supreme Court further expounded upon the logic behind this dichotomy, stating that “[c]laims challenging the correctness of an assessment should go to the forum more suited to hear them, and only if the party is still aggrieved by the governing authority, need it seek a judicial remedy.” Id. at p. 6, 681 So.2d at 941. In Triangle Marine, the Supreme Court expanded upon the concept of legality challenges to include not only those challenges to the validity of the ad valorem tax itself, but also to the constitutionality of the administration of the tax. Id. at pp. 6-7, 681 So.2d at 941 (“We find a challenge to a tax assessment need not contest the validity of the ad valorem tax itself to constitute a legality challenge. Rather, an ‘as applied’ challenge, such as the one asserted by the taxpayers herein, can be a legality challenge.”). Even more recently, in ANR Pipeline, the Supreme Court again reaffirmed the distinction between assessment challenges as expanded by Triangle Marine and held that claims challenging the constitutionality of tax provisions constitute legality challenges over which the | ¡>ndistrict courts exercise original jurisdiction. ANR Pipeline, 02-1479, p. 9, 851 So.2d at 1151.
Ill
In this Part we discuss the producers’ specific challenges to both the district court’s exercise of jurisdiction over the dismissal of their correctness claims, and *236 the constitutionality of the supplemental assessment statutory framework.
A
We first address the plaintiffs’ challenge to the district court’s refusal to find that Louisiana’s statutory framework unconstitutionally prohibits them from making correctness challenges to the parish assessor’s supplemental assessments of the allegedly omitted property. Simply put, the plaintiffs argue that the district court erroneously ruled that the present statutory scheme is constitutional, even though they are prohibited from making correctness challenges to the assessor’s supplemental assessments. That is to say, the plaintiffs argue that their right to challenge the correctness of any assessment, including supplemental assessments, is enshrined in La. Const. Art. 7, § 18 E, and that any statute, such as La. R.S. 47:1966, which results in a forfeiture of this right, and thus vitiates their ability to seek administrative review with the Louisiana Tax Commission, is unconstitutional. In ruling on the plaintiffs’ first motion for summary judgment concerning the constitutionality of Louisiana’s supplemental assessment framework, the district court agreed with the defendants’ arguments and held that the supplemental assessments at issue in these cases involve allegedly omitted ^properties and that omitted properties are not susceptible to correctness challenges under Louisiana law. The district court, accordingly, found that the provisions of La. Const. Art. 7, § 18 E are inapplicable to Louisiana’s supplemental assessment review process. We affirm the district court’s rulings on the constitutionality of Louisiana’s supplemental assessment scheme and explain our reasoning below in more detail.
The question whether the statutes at issue are constitutional is a legal question which will be reviewed de novo. Louisiana Mun. Ass’n, et al. v. State of Louisiana, et al., 04-0227, p. 45 (La.1/19/05), 893 So.2d 809, 842-843. Louisiana jurisprudence has repeatedly held that statutes and legislative acts are generally presumed to be constitutional, and the party challenging the validity of the statute has the burden of proving it is unconstitutional. Id.; State v. Fleury, 01-0871, p. 5 (La.10/16/01), 799 So.2d 468, 472; Board of Comm’rs of North Lafourche Conservation, Levee and Drainage Dist. v. Board of Comm’rs of Atchafalaya Basin Levee Dist., 95-1353, p. 3 (La.1/16/96), 666 So.2d 636, 639. Unlike the federal constitution, the Louisiana “constitution’s provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature.” Louisiana Mun. Ass’n, 04-0227, p. 45, 893 So.2d at 843; Board of Comm’rs, 95-1353, p. 3, 666 So.2d at 639. A constitutional limitation on the legislative power may be either express or implied. World Trade Center Taxing Dist. v. All Taxpayers, Property Owners, 05-0374, p. 12 (La.6/29/05), 908 So.2d 623, 632. Accordingly, a party challenging | g?the constitutionality of a statute must point to a particular provision of the constitution that would prohibit the enactment of the statute, and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the statute in question. Id. at p. 12, 908 So.2d at 632.
Finally, because it is presumed that the legislature acts within its constitutional authority in enacting legislation, this court must construe a statute so as to preserve its constitutionality when it is reasonable to do so. Fleury, 01-0871, p. 5, 799 So.2d at 472; Moore v. Roemer, 567 So.2d 75, 78 (La.1990). In other words, if a statute is susceptible of two constructions, one of which would render it unconstitutional or *237 raise grave constitutional questions, the court will adopt the interpretation of the statute that, without doing violence to its language, will maintain its constitutionality. Hondroulis v. Schuhmacher, 553 So.2d 398, 416-417 (La.1988). Nevertheless, the constitution is the supreme law of this state, to which all legislative acts must yield. World Trade Center Taxing Dist., 05-0374, p. 12, 908 So.2d at 632; Caddo-Shreveport Sales and Use Tax Comm’n, 97-2233, p. 6 (La.4/14/98), 710 So.2d 776, 780. When a statute conflicts with a constitutional provision, the statute must fall. See City of New Orleans v. Louisiana Assessors’ Retirement and Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1. Lastly, the party challenging a statute’s constitutionality bears the burden of proving the unconstitutionality of the legislative act at issue. See State v. All Property and Cas. Ins. Carriers Authorized and Licensed To Do Business In State, 06-2030 (La.8/25/06), 937 So.2d 313.
At the outset, we note that the constitutionality, vel non, of the current Louisiana statutory framework for the assessment of omitted property has not been heretofore addressed by a Louisiana court of review. Accordingly, while there are numerous cases delineating the distinction between correctness and legality challenges, we could find no reported decisions interpreting the statutes under review. Accordingly, our analysis of the plaintiffs’ constitutional challenges is based largely on the language of the statutes themselves.
Turning first to the language of La. Const. Art. 7, § 18 E, we observe that this provision, contrary to the plaintiffs’ assertions, does not appear to establish an inviolable right to correctness challenges so much as a review procedure: “The correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law.” We highlight and contrast this language with those similar provisions found in earlier Louisiana constitutions. For example, Art. 225 of the Louisiana Constitution of 1913 states clearly that “taxpayers shall have the right of testing the correctness of their assessments before the courts of justice.” Similarly, Art. X, § 1 of the Louisiana Constitution of 1921, as amended by Act 81 of 1934, provides that “all tax-payers shall have the right of testing the correctness of their assessments before the courts at the domicile of the assessing authority, or as may |?4be directed by law.” While the language of the current section acknowledges clearly the concept of correctness challenges, Art. 7, § 18 A does not appear to afford constitutional protection to correctness challenges, but instead appears to establish a review procedure for administratively addressing correctness challenges. Nevertheless, we are not called upon today to decide whether La. Const. Art. 7, § 18 A establishes an inviolable right to a correctness challenge per se or a given method of review, because it is clear that whatever right that may be established by this section can, like so many other constitutional rights, be forfeited by taxpayers like the present plaintiffs.
By way of contrast, La. Const. Art. 7, § 3 A appears to provide for a right to legality challenges because its wording presupposes the concept of an illegal tax and obligates the legislature to provide a corresponding remedy: “It [the legislature] shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.” The legislature, on the other hand, is not compelled by La. Const. Art. 7, § 18 A to provide a remedy for the recovery of an incorrect tax. La. Const. Art. 7, § 18 A, instead, merely sets out an administrative *238 review procedure for correctness challenges. Thus, when read together, La. Const. Art. 7, §§ 18 A and 3 A indicate clearly that a taxpayer does not have a right to a correctness challenge or administrative review absent a pre-existing correctness challenge.
We observe, further, that La. Const. Art. 7, § 18 E indicates that it is to be construed in conjunction with “procedures established by law.” Significantly, our 12sreview of Louisiana’s supplemental assessment statutory framework bolsters our conclusion that the plaintiffs have no right to make correctness challenges under the circumstances of this case or have their remaining claims proceed first through administrative review. We first observe that La. R.S. 47:2329 provides that “[wjhenever any property owner fails to make any report required to be made under the provisions of this Act at the time such report becomes due, the property owner shall have no legal right or cause to question or contest the determination of fair market value by the assessor.” La. R.S. 47:2329, therefore, indicates that a property owner who fails to report taxable property forfeits his rights to make a correctness challenge, and to seek administrative review of an assessor’s subsequent fair market value determination. This provision, accordingly, supports our conclusion that correctness challenges are only available to a taxpayer who first is able to proceed through administrative review, and that the administrative review process is not applicable to property subject to supplemental assessments.
Additionally, the version of La. R.S. 47:1957 E in effect at the time of the supplemental assessments provided that “[i]f the assessors find or have reason to believe that the list of taxable property furnished by any person is incomplete or incorrect, they shall add to the list of such property, which from the best information they can obtain, has been omitted or incorrectly described by the person signing the list. Additionally, the taxpayer shall be subject to all applicable penalties, including those provided for by R.S. 47:2329.”[9] Accordingly, this ^version of La. R.S. 47:1957 E empowers an assessor to add omitted property to the tax rolls, authorizes an assessor to use the “best information” they can obtain in order to place the omitted property on the tax rolls, and subjects an omitting taxpayer to the provisions of La. R.S. 47:2329. Thus, a taxpayer who omits property, under the prior version of La. R.S. 47:1957 E, may not make correctness challenges to a supple *239 mental assessment, or seek administrative review of the assessor’s fair market value determinations. Rather, a taxpayer who omits property under the prior La. R.S. 47:1957 E is limited to lodging legality challenges to supplemental assessments. Accordingly, the procedures established by law indicate clearly that correctness challenges cannot be made with respect to supplemental assessments of omitted properties, and that legality challenges to supplemental assessments cannot proceed through the administrative review process. Rather, a taxpayer whose omitted property is subject to supplemental assessment is limited to lodging legality challenges in the district courts. Thus, Louisiana’s statutory framework for supplemental assessments does not run afoul of La. Const. Art. 7, § 18 E, but instead harmoniously complements it.
I27B
We next examine the plaintiffs’ jurisdictional challenge to the trial court’s dismissal of their correctness claims and affirm the district court’s actions. The plaintiffs argue, for the first time on appeal, that the district court lacked original jurisdiction to dismiss their correctness challenges to the assessor’s supplemental assessments in accordance with the parties’ respective cross-motions for summary judgment. Specifically, the plaintiffs argue that the district court has jurisdiction solely over their legality challenges and that it exceeded its jurisdiction when it dismissed their correctness challenges. The defendants assert that the district court did not impermissibly exercise original jurisdiction over the plaintiffs’ correctness claims, but instead recognized that it could not adjudicate those correctness claims found in the plaintiffs’ petitions and dismissed them from this proceeding. Having reviewed the record and the law, we find that the district court did not impermissibly exercise original jurisdiction over the plaintiffs’ correctness challenges.
Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La. C.C.P. art. 1. Subject matter jurisdiction, specifically, is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. A judgment rendered by a court which has no jurisdiction over the subject matter of the action Issor proceeding is void. La. C.C.P. art. 3. A district court’s subject matter jurisdiction is created by the constitution or legislative enactment; see, e.g., La. Const. Art. 5, and it cannot be waived or conferred by the consent of the parties. See La. C.C.P. arts. 3 & 925. A challenge to a district court’s lack of subject matter jurisdiction addresses the court’s authority to adjudicate the cause before it. Tran v. Schwegmann’s Giant Super Market, 609 So.2d 887, 888 -889 (La.App. 4th Cir.1992). It is a matter which may be raised at any time, even by the court on its own motion, at any stage of an action. Id.
At the outset, we note that the district court did not rule on the merits of the plaintiffs’ correctness challenges so much as it found that they have lost the right to assert such a challenge in the present case. The district court’s ruling on this point is in accordance with the applicable law. As noted, Louisiana’s ad valorem adjudicative framework does not allow for correctness challenges to supplemental assessments on allegedly omitted properties. La. Const. Art. 7, § 18 E and its interpreting jurisprudence indicate clearly that correctness challenges are only available when the taxpayer has a right to administrative review. *240 District courts have only appellate, not original, jurisdiction over correctness challenges, but they do have original jurisdiction over legality challenges. La. R.S. 47:1957 E provides that a taxpayer who omits or incorrectly describes taxable property from a report will be subject to the penalties of La. R.S. 47:2329. As noted, La. R.S. 47:2829 provides that a property owner who fails, when the tax is due, to prepare the appropriate report loses his right to challenge the correctness of an assessment. | ^Accordingly, a taxpayer whose omitted property is the subject of a supplemental assessment is statutorily barred from making correctness challenges to an assessor’s supplemental assessment. Thus, the plaintiffs do not have a right to make a correctness challenge to the assessor’s supplemental assessments of their properties or first proceed through administrative review. The plaintiffs, conversely, retain the right to make legality challenges to the assessor’s supplemental assessments.
In the present case, the plaintiffs’ petitions make both correctness and legality challenges to the assessor’s supplemental assessments. However, as noted, the plaintiffs no longer have a right to challenge the correctness of the supplemental assessments. The plaintiffs, likewise, have lost their rights to proceed first administratively, but they still may make legality challenges to the supplemental assessments before the district court. The district court, therefore, properly exercised its subject matter jurisdiction and dismissed the plaintiffs’ correctness challenges pursuant to the assessor’s motions for summary judgment.
IV
In this Part we affirm those aspects of the district court’s judgments which ruled that Louisiana’s statutory scheme regulating the supplemental assessment of omitted property does not allow the plaintiffs to challenge the assessor’s method of arriving at fair market value for allegedly omitted property.
Specifically, the plaintiffs argue that the district court erred when it refused to grant their summary judgments and hold that the assessor is bound to follow the | ^Constitution's “uniformity” requirement with respect to assessments. The plaintiffs, specifically, contend that the assessor failed to follow the Tax Commission’s rules on depreciation of oil and gas equipment. The plaintiffs admit that their challenge to the assessor’s alleged failure on this point is a correctness challenge, but argue that the Constitution’s uniformity requirement elevates this correctness challenge to a constitutional level that should protect it against the clear provision of La. R.S. 47:2329.
The plaintiffs’ base their argument on La. Const. Art. 7, § 18 D, which provides in part: “Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district ... Fair market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.” The plaintiffs further point to La. R.S. 47:2323, which provides in part:
A. The criteria for determining fair market value shall apply uniformly throughout the state. Uniform guidelines, procedures and rules and regulations as are necessary to implement said criteria shall be adopted by the Louisiana Tax Commission only after public hearings held pursuant to the Administrative Procedure Act.
B. Each assessor shall follow the uniform guidelines, procedures, and rules and regulations in determining the *241 fair market value of all property subject to taxation within his respective parish or district. Any manual or manuals used by an assessor shall be subject to approval by the Louisiana Tax Commission or its successor agency.
The plaintiffs, additionally, point to LAC 61:V.lll, which provides, in part:
A. The criteria for determining fair market value shall apply uniformly throughout the state. Uniform guidelines, procedures and rules and regulations as are necessary to implement said criteria shall be adopted by the Louisiana Tax Commission only after public ^hearings held pursuant to the Administrative Procedure Act (R.S. 47:2323.A).
B. Each assessor shall follow the uniform guidelines, procedures, and rules and regulations within his respective parish or district in determining fair market value of all property subject to taxation. Any manual or manuals used by an assessor shall be subject to approval by the Louisiana Tax Commission or its successor agency (R.S. 47:2323.B).
The assessor, in contrast, argued that the issue is not whether he is bound by the LTC’s rules — he agrees that he is — but whether his interpretation of the LTC’s rules is proper. Disagreeing with the plaintiffs, the district court observed:
The Court finds that plaintiffs may not legally challenge the manner in which the assessor calculated depreciation in formulating the supplemental assessments. As the Court ruled in its July 26, 2011 judgment on defendants’ Motion for Partial Summary Judgment Regarding Plaintiffs’ Loss of Right to Contest Fair Market Value of Omitted Property, La. R.S. 47:2329 bars plaintiffs from challenging the determination of fair market value assigned to omitted property subject to supplemental assessment. The Court also ruled in the judgment on plaintiffs’ Cross-Motion for Partial Summary Judgment that “the taxpayers are subject to the penalty provisions of La. R.S. 47:2329, including the prohibition against challenging the fair market value assigned to the property that is subject to the supplemental assessment.”
The district court subsequently concluded:
Plaintiffs maintain that the assessor violated the Tax Commission’s rules by using the actual age of their surface equipment to determine depreciation. Since plaintiffs forfeited their right to challenge the determination of fair market value of omitted property, it stands to reason that they are barred from contesting the assessor’s determination of fair market value. Thus, the Court need not reach the issue of whether the provisions of LAC 61:V.907(C)(4) [on depreciation] are mandatory.
Having reviewed the applicable law and the record, we conclude that the district court ruled correctly. As the district court correctly observed, the plaintiffs are subject to the penalty provisions of La. R.S. 47:2329, including its prohibition ^against challenging the fair market value assigned to the property that is the subject of the supplemental assessment. Accordingly, the plain wording of the statute indicates that plaintiffs have forfeited their right to challenge the fair market value of the supplemental assessments of omitted property-
Further, we observe that we have, on several prior occasions, concluded that a taxpayer’s challenge to the uniformity of assessments is a correctness challenge, subject to the administrative review procedure. Specifically, in Westminster v. Mitchell, 525 So.2d 1171 (La.App. 4th Cir.1988), several property owners sought re *242 covery of ad valorem taxes paid under protest in an action against the City of New Orleans’ finance director. The plaintiffs collectively alleged that their assessments were unequal and not uniform relative to assessments of similar classes of property in adjacent assessment districts and that the assessments in other districts were incorrect because they were too low. The finance director moved for summary judgment, arguing several procedural exceptions. The district court denied the finance director’s motion. We granted the City’s writ application and held, among other things, that the property owners’ complaint was a “correctness” challenge to which constitutionally mandated review procedures applied. This Court framed the issue, and analyzed the problem, accordingly:
Thus, the pivotal issue is whether plaintiffs’ challenge is for “correctness.” Plaintiffs do not challenge the right of the State or any of its political subdivisions to obtain revenue by way of ad valorem taxation. Plaintiffs do not question the methods of enforcement of ad valorem taxes. Plaintiffs complain that their assessments are unequal and not uniform relative to assessments of similar classes of property in adjacent assessment districts. Plaintiffs’ complaint is a “correctness” challenge.
IssPlaintiffs argue that they are not challenging correctness — their assessments are correct, other assessments are incorrect, too low. Plaintiffs argue that their challenge is of constitutional magnitude resulting from inequality and non-uniformity, invoking the due process and equal protection clauses of the state and federal constitutions. We make no argument with plaintiffs’ foundational principle that “if both the standard of true value and the uniformity and equality required by law cannot be achieved, equality and uniformity is preferred under the law.” Sioux City Bridge Company v. Dakota County, Neb., 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Probst v. City of New Orleans, 337 So.2d 1081 (La.1976); Bussie v. Long, 286 So.2d 689 (La.App. 1st Cir.1973), writ denied, 288 So.2d 354 (La.1974). We find, however, that plaintiffs incorrectly construe this and other “constitutional” principles to argue that their challenge is not for “correctness.” “Correctness” includes both the standard of true value and the uniformity and equality required by law. The achievement of both is the ■goal, the absence of either creates incorrectness. That uniformity and equality are given higher priority than true value does not make an attack on the former rather than the latter something other than a challenge for “correctness.”
Westminster, 525 So.2d at 1173.
Having found the plaintiffs’ uniformity challenges to be correctness challenges, we then concluded that the plaintiffs were obliged to pursue these objections through the administrative procedure outlined in La. Const. Art. 7, § 18 E. After reviewing the record, we concluded, however, that none of the plaintiffs had followed the appropriate review procedure. Noting that the time for seeking either administrative, or judicial review, of the plaintiffs’ correctness challenges had passed, this Court reversed the district court’s denial of the City’s motion for summary judgment and dismissed the plaintiffs’ suits.
Likewise, in Abraham v. Carter, 580 So.2d 485 (La.App. 4th Cir.1991), the plaintiff sued his assessor in an attempt to reduce the assessment on his property to its actual cash value. The plaintiffs argued that the assessor overvalued | S4his property, and that comparable properties of the same class in the city are assessed at lower values than his property. The *243 plaintiff paid the tax under protest and filed suit seeking a refund of the alleged overpayment. The assessor filed an answer and an exception of prescription, Finding that the plaintiff’s challenge amounted to a correctness challenge, and that the plaintiff failed to proceed timely through the administrative review process, the district court granted the exception, and the plaintiff appealed. This Court affirmed the dismissal of the plaintiffs claims. This Court concluded that the plaintiffs challenges were correctness challenges, which were not timely brought via the administrative review procedure. In so holding, this Court also concluded that the plaintiffs uniformity complaint was, in fact, a correctness challenge:
Mr. Abraham’s second challenge for uniformity and equality is also a correctness challenge controlled by La. R.S. 47:1998, under La. Const. Art. 7 Section 18 as construed by Westminster, id. and Lowrey [Chevrolet, Inc. v. Brumley], id. [510 So.2d 1294 (La.App. 3 Cir.1987)] Although the record reflects Mr. Abraham’s property has been overvalued and overassessed, Mr. Abraham contends the valuation of $2,407,000.00 should be lowered to reflect the fair market value of $900,000.00, thus lowering the assessment from $361,000.00 to $135,000.00; however, the district court was powerless to hear the suit unless Mr. Abraham complied with the established administrative procedures first. Therefore the trial court did not err in granting the exception of prescription, and dismissing Mr. Abraham’s suit.
Abraham, 580 So.2d at 487-488.
As we did in Westminster and Abraham, we conclude in the present case that the plaintiffs’ uniformity arguments, including their arguments about the proper application of the LTC’s depreciation rules, amount to correctness challenges. Given that La. R.S. 47:2329 indicates that the plaintiffs have forfeited their right to bring correctness challenges, we find that the district court did not err when it | ^concluded that Louisiana’s statutory scheme regulating the supplemental assessment of omitted property does not allow the plaintiffs to challenge the assessor’s method of arriving at fair market value for allegedly omitted property.
V
In this Part we address those aspects of the district court’s judgments which collectively hold that other platforms, such as production platforms, are to be taxed separately while well protector platforms are to be assessed as part of the well for taxation purposes. Both plaintiffs and defendants appeal various portions of these rulings from the district court. Specifically, the district court’s July 26, 2011 and December 8, 2011 judgments hold that platforms referred to as keyways or well protection platforms are part of the well for taxation purposes. Conversely, the district court denied the plaintiffs’ motions with respect to platforms other than keyways or well protection platforms. The defendants ask us to reverse those district court judgments that hold that well-protector platforms are part of the well, and thus not subject to separate assessment. The plaintiffs, conversely, ask us to reverse those portions of the district court’s judgments that hold that other production platforms are subject to separate assessment. After reviewing the record and the law, we affirm the district court’s rulings.
A
Here, we first address the defendants’ arguments that the district court’s ruling on keyways and well protector platforms should be reversed. Specifically, the district court first recognized that Section *244 905, of Chapter 9 of the Louisiana |3(iTax Commission’s Rules and Regulations, pertains to reporting procedures and divides oil and gas properties into two categories: 1) oil, gas, and associated wells; and 2) surface equipment. Section 901.B.1 of the Rules and Regulations further provides that “the well includes all of the equipment and any other taxable property located below the wellhead, as well as the casing-head, and/or xmas tree.” Section 907 and Table 907 C-l of the Rules and Regulations, govern the assessment of surface equipment. Table 907 C-l provides in pertinent part: “All surface equipment, including other property associated or used in connection with the oil and gas industry in the field of operation, must be rendered in accordance with guidelines established by the Tax Commission and in accordance with requirements set forth on LAT Form 12 — Personal Property Tax Report — Oil and Gas Property.” The district court then observed that the Tax Commission has recently addressed this issue and cited, at length, from several identical appeals arising from regular assessments on oil and gas properties in Plaquemines Parish. Specifically, the district court noted that the Tax Commission was asked to clarify and interpret the definition of “well” found in Rule 901.B.1. The Tax Commission held:
The fact that the definition does not stop at “below the wellhead”, but goes on to say that “as well as the casing-head, wellhead and/or Christmas tree” clearly shows that the intent is to include other platforms, which are often referred to as keyways or well jackets.
This is further evidenced by the fact that the testimony from both the Taxpayers’ expert and the Assessor’s expert were in agreement that well protection platforms are installed during the drilling of the well and are normally required during the drilling phase of the well. It is also important to note that platforms are commonly |,^included in the drilling “AFE’s” (Authorization for Expenditures) of the oil and gas industry and the Taxpayers presented evidence that their AFE’s did include platforms for the wells they reported to the Assessor.
[[Image here]]
This Commission thus concludes that, as to wells reported by the Taxpayer, the Taxpayer carried its burden of proof that the well protection platforms, also known as keyways and well jackets, were included in the cost of those wells reported and are not subject to further, or independent, assessment separate from those reported wells.
In He: Appeal of Cox Operating, L.L.C., Docket No. 09-22075-11 (La. Tax Comn. 7/12/11).
With respect to omitted properties, the Tax Commission held that such property is subject the provisions of La. R.S. 47:1957 E and La. R.S. 47:2329, and that a non-reporting taxpayer is precluded from contesting the values placed on such items by the assessor:
The non-reported properties variously include but are not limited to platforms housing compressors, heaters, separators, bunkhouses and the like; certain pipelines were omitted, as were other associated equipment and accessories. The Assessor demonstrated that he incurred considerable expense (of Taxpayer funds) to locate and identify properties that were not reported by the Taxpayers but which should have been reported by them. Our property tax system has as its linchpin the concept of self-reporting. The Assessor is not required to make an inventory of a Taxpayer’s • property, that is the Taxpayer’s responsibility, failing that re *245 sponsibility, the Taxpayer faces the consequences as set forth by applicable law.
The Commission finds it patently unfair that any Taxpayer failing to report properties who causes an Assessor to go to considerable expense to locate those properties on his own should have the same rights of protest as any other Taxpayer who follows the rules and reports all of its property. This Commission is mindful of the principles of uniformity of taxation, but finds that Taxpayers who fail to report property should be treated uniformly with other Taxpayers who fail to report property, and not uniformly with Taxpayers who faithfully report what they own. A Taxpayer should not be entitled to use to his advantage, and against the advantage of the Assessor and the local tax-recipient bodies, Rules or Regulations Issof this Commission that are designed for Taxpayers who follow the rules.
The district court ruled that the Tax Commission was in the best position to interpret its own rules, and thus, deferred to its decision on keyways and well protector platforms. The record indicates that the taxpayers in those rulings settled with the assessor prior to the district court’s appellate review of the Tax Commission’s ruling. The Tax Commission’s ruling is, therefore, final. See La. R.S. 47:1989 D(l), “[a]ll decisions by the tax commission are final unless appealed to the district court within thirty days.” Nevertheless, the defendants have not created a genuine issue of fact with respect to this issue or set forth arguments which would lead us to overrule the Tax Commissions rulings, which are not before us.
B
We now turn to address the district court’s ruling that other production platforms are subject to separate assessment. In the September 27, 2011 clarifying judgments, the district court addressed the issue of the assessment of platforms other than keyways or well protector platforms. Specifically, the district court again cited to Table 907 C-l, which provides in part that docks, platforms, and buildings are to be assessed on an individual basis, as well as to the previously referenced Tax Commission ruling, and held that such other platforms and structures are to be assessed independently of the well. Our review of the record indicates that the evidence submitted by the plaintiffs to the district court consists solely of proposed, though unadopted, Tax Commission guidelines, and unverified | S9hearsay evidence in the form of proposals, recommendations, and agendas for informal meetings. Taken together, the plaintiffs’ submissions do not create a genuine issue of material fact as to the propriety of the separate assessment of other platforms, nor alter the clear import of the Tax Commissions previously-cited rulings on the assessment of wellheads.
VI
In conclusion, we affirm the district court’s rulings in toto. First, we affirm the district court’s denial of the plaintiffs’ motions for partial summary judgment regarding the constitutional issues raised in their petitions. We specifically affirm the district court’s exercise of jurisdiction in the proceedings below. We further conclude that La. R.S. 47:1966 is constitutional and find that it constitutionally provides a taxpayer who is required to self-report its personal property which is subject to ad valorem taxation and fails to do so forfeits his right to a correctness challenge of the resulting supplemental assessment. Thus, we likewise hold that a district court has no power or authority to review for correctness any supplemental assessment for such omitted property. Accordingly, we *246 affirm the district court’s granting of the defendants’ motions for partial summary-judgment that asked the district court to conclude that the plaintiffs have forfeited their rights to contest the assessor’s supplemental assessment fair market value determinations of their allegedly omitted properties. Nevertheless, we also conclude that La. R.S. 47:1966 A does not purport to preclude a district court from exercising its original jurisdiction to review the assessor’s determination that a particular piece of 140property is subject to a supplemental assessment and, when appropriate, to invalidate a supplemental assessment.
Finally, we find as a matter of law that the district court properly applied the rules of the Louisiana Tax Commission and distinguished between well-protection platforms and other platforms for the purposes of determining which types the taxpayers must self-report separately from the well.
DECREE
Accordingly, we affirm all the final and appealable partial summary judgments as well as the interlocutory rulings denying partial summary judgment motions from the district court under review.
AFFIRMED

. The plaintiffs in these consolidated suits are The Bass Partnership, Bepco, L.P., Bopco, L.P., Stone Energy Offshore, L.L.C., Stone Energy Corporation, Hilcorp Energy I, L.P., Hilcorp Energy Company, Clayton Williams Energy, Inc., and W & T Offshore, Inc. After the matter was submitted to the panel, one plaintiff, W & T Offshore, Inc., dismissed its appeal with prejudice.

. In addition to the assessor and sheriff/ex officio tax collector, Pete Peters, as Chairman of the Louisiana Tax Commission, was named as a party defendant.

. Louisiana Administrative Code 61:V.903(A).

. It is axiomatic that appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. See Hare v. Paleo Data, Inc., 11-1034, p. 9 (La.App. 4 Cir. 4/4/12), 89 So.3d 380, 387. "A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of summary judgment does not dispose of the entire case.'1 La. C.C.P. art. 966 E. "[A] motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” La. C.C.P. art. 966 C(l). "The burden of proof remains with the movant.” La. C.C.P. art. 966 C(2). "However, if the mov-ant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense.” Id. "Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” Id.

. The plaintiffs applied for supervisory writs to this Court, challenging the district court’s judgment, and writs were denied. Clayton Williams Energy, Inc. v. Robert R. “Bobby” Gravolet, et al., unpub., 11-0722 (La.App. 4 Cir. 6/7/11); Stone Energy Offshore, L.L.C., et al. v. Robert R. "Bobby" Gravolet, et al., un-pub., 11-0723 (La.App. 4 Cir. 6/7/11); Hilcorp Energy I, L.P. v. Robert R. “Bobby” Gravolet, et al., unpub., 11-0725 (La.App. 4 Cir. 6/7/11); The Bass Partnership, et al. v. Robert R. “Bobby” Gravolet, et al., unpub., 11-0726, (La.App. 4 Cir. 6/7/11). The Louisiana Supreme Court also denied writs. Hilcorp Energy I, L.P. v. Robert R. “Bobby" Gravolet, et al., 11-1311 (La.6/29/11), 64 So.3d 231; Stone Energy Offshore, L.L.C., et al. v. Robert R. "Bobby" Gravolet, et al, 11-1314 (La.6/29/11), 64 So.3d 230; Clayton Williams Energy, Inc. v. Robert R. “Bobby” Gravolet, et al., 11-1316 (La.6/29/11), 64 So.3d 230; The Bass Partnership, et al. v. Robert R. “Bobby" Gravolet, et al., 11-1317, (La.6/29/11), 64 So.3d 229.

. Ad valorem taxes are taxes in which the amount of the tax is proportional to the value of the thing taxed. See Black’s Law Dictionary 57 (8th ed.2004).

. The 1921 Louisiana Constitution, by Article X, § 2, created the Louisiana Tax Commission. Subsequently, the 1974 Louisiana Constitution, by Article XIV, § 16(A), continued the provision as a statute, which is now embodied in La. R.S. 47:1831. The legislature conferred specific duties on the Commission with respect to property taxes, and authorized it to have "duties, powers, or responsibilities otherwise conferred” upon it. La. R.S. 47:1835. With respect to property taxes, La. R.S. 47:1837 provides, among other things, that the Tax Commission shall "administer and enforce all laws related to the state supervision of local property tax assessments and the assessment of public service properties” and “measure the level of appraisals or assessments and the degree of uniformity of assessments for each major class and type of property in each parish throughout the state.” Similarly, La. R.S. 47:1837 also provides that the Tax Commission shall "issue and, from time to time, may amend or revise rules and regulations containing minimum standards of assessment and appraisal performance."

. Significantly, the record indicates that the plaintiffs herein never attempted to first challenge the assessor’s supplemental assessments before the Tax Commission. Thus, the plaintiffs have asked the district court to exercise original jurisdiction over both their correctness and legality challenges.

. La. R.S. 47:1957 E was amended in 2010, and now provides:
If the assessors find or have reason to believe that the list of taxable property furnished by any person is incomplete or incorrect, they shall add to the list such property, which from the best information they can obtain, has been omitted or incorrectly described by the person signing the list. The assessor shall mail a notification to the taxpayer, at least three days before the first day of the inspection period, which summarizes the changes made to the list. The notice shall be mailed to the same address to which the notice of tax due is sent by the collector of taxes. By the conclusion of the inspection period, if the taxpayer does not challenge such changes, the taxpayer shall be subject to all applicable penalties, including those provided for by R.S. 47:2329.
The district court concluded that the amended version of La. R.S. 47:1957 E was effected a substantive change, and, thus, was insusceptible of retroactive application. The amending act makes no mention of retroactivity. Further, in light of the fact that the amended statute places new obligations upon assessors, and provides new rights to taxpayers, we find no error in the district court’s ruling that the amendment to La. R.S. 47:1957(E) should only be applied prospectively. Sher v. Lafayette Ins. Co., 07-2441, 07-2443, pp. 17-18 (La.4/8/08), 988 So.2d 186, 200-201.